By the Court.
The defendant appeals from the whole, and the plaintiff from a part of the judgment. The points presented by the defendant’s appeal will be first considered. The latter appeal presents only questions of law. Ho motion is made to set aside the verdict as being contrary to evidence. The defendant’s printed points, being twenty-seven in number, will be considered in their order.

Defendants First Point.

The point first made is, that the Superior Court of the city of Hew York has no jurisdiction in actions for divorce.
It is a sufficient answer to this point, to say, that if the proceeding to obtain a divorce, is an action, within the meaning of that word, as used in the Code, there can be no doubt that this court has jurisdiction.
Section thirty-three of the Code declares that the jurisdiction of this court shall extend to the actions enumerated in section 123 and section 124, in certain cases. (The action for a divorce is not enumerated in those sections.) “ To all other actions, where all the defendants shall reside, or are personally served with the summons” within the city and county of Hew York. The defendant resided and was served with the summons within that city.
*115 “An action,” as defined by the Code, “is an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offence,” (Code, § 2.) Every other remedy is a special proceeding, and all remedies in the courts of justice are divided into “ actions and special proceedings.” (Code, §§ 1 and 3.)
This proceeding is one to redress a wrong, and to enforce a right consequent upon it. It is conducted as all other remedies by action are pursued, by summons and complaint. It is called an action in the Code, and there are provisions in the Code relative to proceedings to be had in it. (Code, § 135 and sub. 5, and § 253.) By whatever tribunal proceedings of this nature are considered in England, we think that in this state, by long and well-settled practice, and the legislation had on the subject, they are to be deemed within the jurisdiction - of courts of equity as much as before the recent constitution was adopted, and that the legislature is competent to confer on this court jurisdiction of such an action there can be no doubt. (Cons. Art. 6, § 5 and § 14, and Art. 14, § 12, and Cons. of 1821, Art. 5, § 5, and Art. 7, § 2.)
The legislature was competent to vest, and by unequivocal language has vested in this court, jurisdiction of this action against any person resident in, and served with summons in the city of New York, when the plaintiff is also a resident of the state.

Defendants Second Point.

“ The plaintiff was improperly permitted to read, on the trial, a copy of what purported to be a petition of the defendant to the legislature of Pennsylvania, without proof that the paper from which it was copied was an original signed by him.”
When this paper was first offered in evidence, the defendant’s counsel objected “ on the ground that it was only a copy, and that the absence of the original was not sufficiently accounted for,” and that objection was then sustained. When it was afterwards received, “the defendant’s counsel renewed his objection thereto,” and excepted to the decision admitting it.
This paper had been prepared and served on the plaintiff by the defendant’s direction, with a notice that the petition would be presented to the legislature of the state of Pennsylvania, at Har *116 risburg, on the 21st of February, 1850. The petition appeared to have been sworn to on the 16th, and the notice was dated on the 19th of that month. The person who served it swore that he had no doubt he compared it with the original sent to Harrisburg, although he had no distinct recollection of so comparing it, or of seeing the original.
It was proved that on a search made in the office of the clerk of the House of Representatives, a paper purporting to be a petition of the defendant, verified the 16th of February, 1850, with a notice dated the 19th .of that month, of presenting it on the 21st, with an affidavit of service of a copy of the petition and notice on the plaintiff, by Wm. Ellery Sedgwick, was filed on the latter date, by the clerk. Ho other petition or copy of a petition was found among the papers in the office of such clerk, or in the office of the clerk of the senate. That paper was, in all respects, like the one admitted in evidence. Hotice had been given' to the defendant to produce the original on the trial. If it was in his possession or control, the paper read in evidence was properly admitted. Search was made in the proper places for the original. It was made at the places where search should have been made, if the paper was used, as the defendant notified the plaintiff it would be. It could not be found, unless the paper actually found was the original petition. The paper read is proved to be an exact copy of the one so found.
The specific objection being, that the absence of the original was not sufficiently accounted for, and all the search having been made which reasonable diligence required, the paper was properly admitted as a copy.
The testimony showed distinctly that the original “ was given to the defendant to be carried to Harrisburg where the Pennsylvania legislature was in session at the time.” If he carried it and delivered it according to the direction given to him, then proper search was made and the evidence was clearly sufficient to show, prima fade, that the paper found was the one so carried by him and delivered. If he did not carry and deliver it, then presumptively it still remained in his possession and secondary evidence was proper.
(The discussion of points 3, 6, 7, 8 and 9 omitted, as not involving questions of law of general interest.)

*117
Defendant's Tenth, Point.

“ The court erred in refusing to allow the defendant to read in evidence the letter marked exhibit A, addressed Consuelo, at the stage of the proceedings when first offered.”
This letter was subsequently admitted and read in evidence by the defendant.
There is nothing in this point, unless it be a sound rule of law, that a ruling, rejecting evidence offered, erroneous at the time it was made, cannot be cured by admitting the same evidence at the instance of the party excepting, in a subsequent stage of the trial.
The defendant did not stand upon the exception he had taken, but gave other evidence to entitle him to read that letter, and after he had given it, he was allowed, on his own motion, to read, and did thereupon read, it in evidence. No authority has been cited to the effect that for such an error a new trial should be granted.
It is deemed to be well settled law, that if a defendant moves for a nonsuit when the plaintiff rests, which is erroneously denied, yet, if the defendant, although he excepts to the decision instead of relying upon it, proceeds to give evidence in the cause and the plaintiff recovers, a new trial will not be granted for such error, if the whole evidence given is sufficient to uphold the verdict. (2 Wend. 561, 7 ib. 377.)
It seems to us that that case is stronger than the present. In that if a correct ruling had been made, the defendant would have succeeded in the action. If the ruling which the defendant insists was the proper one had been made in this case, and the letter admitted, it by no means follows that the action would have terminated in favor of the defendant.
In that case, the defendant, by not standing upon his exception, loses his right to a new trial. It is difficult to state a principle which should exempt the omission to rely upon the exception in this case from the same consequences.
This view is presented upon the assumption that the ruling by which the letter was excluded, when first offered, was erroneous. In this view of the question we deem it unnecessary to express any opinion whether it was erroneous or not. For, conceding that it was, we do not think a new trial should be granted for that *118 cause, for the reason, that on the defendant’s motion the letter was subsequently read in evidence by him, and before any witness had been further examined before the jury.

Defendant's Eleventh, Point.

To understand this point and its six subdivisions, it is necessary to state how the questions arose, and the decisions made which this point brings under review.
In an action pending in the Supreme Court of this-state, brought by the plaintiff against the defendant to obtain a divorce, an order was made September 2d, 1850, restraining him from further prosecuting a suit previously brought by him against the plaintiff, to obtain a divorce, in the Court of Common Pleas for the city and county of Philadelphia, or any other suit for a divorce, in any state other than New York, and also restraining him from doing other specified acts.
The defendant moved in the said Supreme Court, on his own affidavit, made November 15th, 1850, and other papers, to dissolve that injunction. It was opposed, among other papers, on an affidavit of the plaintiff, made December 20th, 1850 ; also on an affidavit made by the plaintiff September 2d, 1850, and which was affirmed by the affidavit of December 20th to be true, and on the complaint in that suit.
The defendant, after the Consuelo letter had been rejected, as stated under his tenth point, apparently for the purpose of furnishing evidence which would establish his right to read that letter, produced the two affidavits of November 15th and December 20th, 1850, and offered “to read in evidence from the lastsaid affidavit of the defendant the statements therein contained as to the manner in which the bundle of letters therein mentioned, in which the letter addressed to Consuelo was alleged to have been contained, had been kept by the plaintiff and discovered by the defendant, and the genuineness and character of that letter, and the nature of the intercourse alleged to have taken place between the plaintiff and Jamieson after her receipt of that letter.”
This Consuelo letter, so called, was alleged to have been written by Jamieson to the plaintiff, to have been retained by her with other letters, which, it was averred, she carried about her person, and to have been discovered by the defendant in a private drawer *119 of the plaintiff’s on the 18th of January, 1849. It was also insisted that the contents of this letter implied an admission, if it did not affirm, the fact of improper intercourse having taken place between Jamieson and the plaintiff, and that the discovery of this letter was the cause of the separation.
The plaintiff’s counsel objected to any part of that affidavit being read in evidence, and “ the court sustained such objection, and held, that no part of such affidavit could be read in evidence unless the defendant’s counsel should elect first to read the said affidavit of the plaintiff, and it should appear therefrom that the reading of some parts of the defendant’s affidavit was necessary to explain and render intelligible some parts of the affidavit of the plaintiff so read in evidence. To which decision of the court, and every part thereof, the defendant’s counsel excepted.”
The defendant’s counsel then read in evidence from said affidavit of the plaintiff, parts of it which admitted the receipt by her of the paper called the Consuelo letter, and which also denied that she carried it about her person, secreted, or that she kept it concealed.
The defendant’s counsel “thereupon proposed to read from the defendant’s said affidavit, the statements therein contained, as to the manner in which he had discovered the said letter addressed to Consuelo. Plaintiff’s counsel objected, and the court sustained such objection. To which decision defendant’s counsel excepted.”
“ And the plaintiff’s counsel hereupon claimed, that the plaintiff’s counsel had a right to read to the jury, or to have read by the clerk, other portions of the said affidavit of the .plaintiff, or that those portions thereof already read should be stricken out of the case. The Justice so held and decided, and the defendant’s counsel excepted to such decision.”
“And the defendant’s counsel further claimed and insisted, that he should not, as a condition to the parts off said affidavit already read by him being retained as evidence in the cause, be obliged to acquiesce in the reading to the jury of any parts of said affidavit of the plaintiff, except such as might further explain or qualify some of the portions already read, nor any of those parts of said affidavit of said plaintiff which were irrelevant, but the court decided otherwise, and held, that the parts of said affidavit, which the defendant’s counsel had read in evidence, should be *120 excluded from the case, unless he reads, or the plaintiff’s counsel was permitted to read, such other parts thereof as the plaintiff’s counsel should require to be read.”
The plaintiff’s counsel thereupon marked parts of plaintiff’s said affidavit which he did not desire to be read to the jury, and “ called for and required defendant’s counsel to read in evidence to the jury all the residue of said affidavit. The Justice sustained such requirement. To each and every part of which said decision of the said Justice the defendant’s counsel excepted.” Defendant’s counsel, under the requirements of the said decision, read the residue of the said affidavit, and also six of the several parts, specified by the plaintiff’s counsel as parts, which he did not insist should be read.
“And hereupon plaintiff’s counsel claimed and insisted, that the other affidavit of the plaintiff, made on the second day of September, 1850, having been referred to and re-affirmed in the said affidavit of the plaintiff, of December 20, 1850, the plaintiff was entitled to read or have read in evidence, the said affidavit of the 2d of September, 1850. The court concurred with the plaintiff's counsel, and thereupon the defendant’s counsel also read said affidavit of the plaintiff of the 2d of September, 1850. To this decision defendant’s counsel also excepted.”
The defendant’s counsel upon such requirement thereupon read said last-mentioned affidavit.
Defendant’s counsel upon the like requirement of the court also read the following portion of the complaint of the said plaintiff in the said suit, pending in the Supreme Court, as follows:
“ She, the said plaintiff, has at all times, since her said marriage, lived and conducted herself in a chaste and virtuous manner, as the wife of him, the said Edwin Forrest, and has never committed adultery, or been guilty of any unchaste, impure, or immodest conduct whatever.” .To the requirement that this part of the complaint should be read, an exception was taken.
“ And hereupon the defendant’s counsel again offered to read in evidence the said affidavit of the defendant, for the purpose of explaining the statements in the said affidavit of the plaintiff, on the 20th of December, 1850. The plaintiff’s counsel objected, and the court sustained such objection, to which defendant’s counsel excepted.”
*121 “ Defendant’s counsel hereupon offered and proposed to read in evidence certain parts of defendant’s said affidavit, but the plaintiff’s counsel objected, and the court sustained the objection, to .which decision defendant’s counsel excepted; and the Justice held that the defendant was only entitled to read such parts of his said affidavit as were necessary to render the statements made by the plaintiff in her said affidavit, of the 20th of December, intelligible, and where the same could not be understood without such reference; that the parts offered to be read contained allegations not necessary in order to understand fully the allegations in the plaintiff’s affidavit, and he sustained the objection of plaintiff’s counsel. To which decision defendant’s counsel excepted.” “Defendant’s counsel again offered in evidence the said letter addressed to Consuelo, marked Schedule A; plaintiff’s counsel objected, but the court allowed the said letter to be read in evidence, and it was read.”
Before the evidence was closed plaintiff’s counsel offered in open court:
1st. “ That the parts of Mr. Forrest’s said affidavit (of Nov. 15, 1850) which are not marked with a pencil, and now shown to the court, may be read, not as evidence of the facts therein stated, but as mere statements, for the purpose of making more intelligible the parts of Mrs. Forrest’s affidavits, made Sept. 2d and December 20, 1850.”
2d. “That any other part of such affidavit may be, in like manner, read, which the Chief-Justice shall deem relevant, and likely to make more intelligible Mrs. Forrest’s said affidavits.”
3d. “ That, in like manner and for the like purpose, any part of Mr. Forrest’s said affidavit, which answers in any way the matters of Mrs. Forrest’s affidavits of Sept. 2d, 1850, (may be read,) beginning with folio 223 of the printed book on this trial, to and including folio 229 of the same book.”
4th. “ That the defendant’s counsel may, in like manner, and for the like purpose, read any part of the answer to the complaint in the suit for an absolute divorce in the Supreme Court; and the plaintiff invites the counsel for defendant to point out any other part of the aforesaid affidavit of the defendant which he supposes ought to be read in manner and for the purpose aforesaid, intending, if she can concur in such view of the same, to give her *122 consent, that the same be read, and the defendant’s counsel declined to act upon such offer.”
The defendant’s 11th point is, that each of the said several decisions is erroneous, and that the aforesaid offer of plaintiff’s counsel does not obviate the said errors.
Heither party has a right to read on the trial of a cause, an affidavit made by himself, as evidence in his own favor, of the truth of 'the statements it contains.
The fact that it was answered in the action in which it was made and used, by an affidavit of the other party, does not make it admissible as evidence in his own favor, on the trial of another action, to maintain the issues being tried in the latter.
Either party has a right to read any affidavit made, or writing signed by the other, if it contains matters pertinent to the issues.
If a defendant reads, on the trial of an action, part of an affidavit made by the plaintiff in another action, the plaintiff has a right to read, or have the whole of such affidavit read, or all parts of it which are relevant, if the whole, or the parts he proposes to read, tend to explain, modify, or' even destroy the particular admission or admissions, which have been read as evidence against him from the same affidavit.
May he also read parts of the same affidavit, which contain statements in his own favor, upon the general merits of the action, but which have no connection with the matters of the admission contained in those parts of it read against him, as evidence of the truth of such statements ?
Assuming that the plaintiff was entitled to read all portions of her said affidavit; which not only stated the circumstances under which the Consuelo letter was received; and the manner in which it had been kept, and why it had not been destroyed, but also those parts of it which denied that she had written to Jamieson after she received it, or her meeting him but once afterward, or that any thing improper in manner or intent had ever occurred between them, was she at liberty to read other parts of her said affidavit, which in no way tended to explain the full and exact meaning of the passages read by the defendant, or to obviate or fully answer the effect that might be produced, or the inferences that might be drawn from such passages, although material and relevant to the issues to be tried ?
*123 In the Queen's case (2 Brod. & Bing. 294) certain questions, in the course of the proceedings, were proposed by the Lords to the Judges.
One of the questions proposed an inquiry as to the extent to which a witness for a plaintiff, who, on cross-examination, stated that at a time specified he told one 0 D he was one of the witnesses against B, the defendant, might be re-examined on behalf of the plaintiff as to the conversation with 0 D; whether, so far only as such conversations at the time specified related to his being such witness, or whether he could be asked, “as well with respect to such conversation relating to his being one of the witnesses against B, as passed between him and 0 D at the time specified, after he had told him that he was to be one of the witnesses, as with respect to such conversation as passed before he so told him?”
Best, J., was of opinion that he might, on re-examination, be asked as to all such matters. The other Judges thought otherwise, and concurred in the conclusions stated by Abbott, Oh. J., and in the reasons stated by him in support of them.
Abbott, Oh. J., in delivering his opinion, said:—“I think the counsel has a right, upon re-examination, to ask all questions which may be proper to draw forth an explanation of the sense and meaning of the expressions used by the witness on cross-examination, if they be in' themselves doubtful, and also of the motive by which the witness was induced to use those expressions; but I think he has no right to go further and to introduce matter new in itself, and not suited to the purpose of explaining either the expressions or the motives of the witnesses.” * * * “ And I distinguish between a conversation which a witness may have had with a party to the suit, whether criminal or civil, and a conversation with a third person. The conversations of a party to the suit are, in themselves, evidence against him in the suit, and, if a counsel chooses to ask a witness as to any thing which may have been said by an adverse party,' the counsel for that party has a right to lay before the court the whole which was said by his client in the same conversation, and not only so much as may explain or qualify the matter introduced by the previous examination, but even matter not properly connected with the part introduced upon the previous examination, provided only that it relate to the subject matter of the suit, because it would not be just to *124 take part of a conversation as evidence against a party without giving to the party at the same time the benefit of the entire residue of what he said on this occasion.
But the conversation of a witness with a third person is not in itself evidence against any party to the suit. It becomes evidence only as it may affect the character and credit of the witness which may be affected by his antecedent declarations, and by the motive under which he made them; but when once all which had constituted the motive and inducement, and all which may show the meaning of the words and declarations has been laid before the court, the court becomes possessed of all which can affect the character or credit of the witness, and all beyond this is, in my opinion, irrelevant and incompetent.”
The rule as here stated allows either party, whose conversation or admissions have been proved by the other, to prove as evidence in his own favor the entire residue of such conversation or admissions, provided only that it is relevant to the issues to be tried. So it also permits a party whose witness, on cross-examination, has testified to conversations between himself and a third person, to prove the entire residue of such conversation, if suited either to explain the sense or meaning of the expressions first testified to, or the motive or inducement of the witness to make them. In other words, as what the witness may have said to a third person is relevant only so far as it may affect his character or credit as a witness, if the party against whom he is called examines him as to any such conversation, the other party may re-examine him as to all of such conversation as is relevant to the issues, which will include only so much of it as tends to illustrate his meaning in what he said and his motive in saying it, or the inducement to the conversation.
In Prince v. Samo (7 Ad. and E. 627) it was decided that a witness who, on his cross-examination, had testified to statements made by the plaintiff in a particular conversation, could not, for that cause, be re-examined as to other statements made by the plaintiff in the same conversation, not connected with the statements to which the cross-examination related, although relevant to the issues to be tried.
Lord Denman, Oh. J., in pronouncing the judgment of the court, expressed the opinion that the doctrine laid down by Ab *125 bote, Oh. J., in the Queen's case, in so far as it was not introduced as an answer to any question proposed by the House of Lords, might be strictly regarded as extra judicial, that it was not necessary as a reason for the answer to the question that was proposed, and that it did not rest on any previous authority. The court thought that the line was correctly drawn at the trial, and that the reason of the thing required that a re-examination should be confined, to s-uch parts of the conversation as related to the same matter as those to which the witness had testified at the instance of the adverse party.
See Yates et al. Assignees of Marshall v. Carnsew, (3 C. & P. 99,) Sturge v. Buchanan, (10 Ad. and E. 598,) Randall v. Blackburn, (5 Taunt. 245; 2 Carr. & P. 569,) Smith v. Blandy, et al. (Ryan & Moody, 257,) Dicas v. Brougham, (6 Carr. & P. 249,) Rex v. Clowes, (4 Ib. 221,) Rex v. Higgins, (3 Ib. 603,) Rex v. Jones, (2 Ib. 629,) and see also Young v. Bennett, (4 Scam. Ill. 43,) Sands, &c. v. Crooker, (3 Brevard. So. Ca. 40; 17 Pick. 182, 10 N. Hamp. 205, 11 Ib. 547, 5 Monroe, Ky. 94.)
In this state, the decisions are uniform in going to the extent that if one party prove a single cause of action against the other, by giving evidence of a conversation of such other party, the latter may prove that jn the residue of such conversation, he stated that such cause of action had been extinguished by payment or release, or that he had a subsisting counter-claim which would affect the amount of the recovery, (3 J. R. 427; 9 id. 141; 10 id. 38 and 365; 11 id. 161; 15 id. 229; 6 Cow. 682; 24 Wend. 350, Garey v. Nicholson, and 2 Hill, 440, Kelsey v. Bush.
In Garey v. Nicholson, the latter sued the former in trespass for taking a mare. It was proved by the plaintiff’s son that he took the mare out of the stable by defendant’s direction, who was a constable, and claimed to take it under an attachment in favor of one Pine. The defendant’s counsel “ asked for all the conversation between the defendant and the witness at the time.” On objection the evidence was excluded, and defendant’s counsel excepted. The plaintiff having obtained a verdict, the defendant brought error, and the judgment was reversed on another ground, but the court held, that there was no error in refusing to admit the whole conversation.
Of this case it is to be observed, that the report of it does not *126 disclose what the defendant wished or proposed to prove by giving in evidence the residue of the conversation. There is nothing in the terms of the offer from which it can necessarily be inferred that the residue of the conversation was relevant to the. issue. If it was, it was clearly admissible under the decisions of the courts in this state, as the cause of action was a single one, and the part of the conversation proved tended to establish it. If the residue of the conversation, if credited, would show that it was discharged, or would justify the apparent trespass, it was admissible, unless it would prove facts, which cannot be proved by parol, and inadmissible for that cause alone.
Cowen, J., in giving the opinion of the court, says, that the rule which entitles a party, a portion of whose conversation has been proved, to have the whole prvoed, “ must obviously mean that the additional conversation called for should be relevant to the matter in issue. All evidence is received under that qualifica tion; and if not so restrained, might operate as a waste of time. Other subjects might be introduced having no connection with the subject matter of the suit.”
But an opinion was also expressed by Justice Oowen that the rule must be still further restrained, and that, although the additional matter called for may respect the subject matter of the suit, and make in favor of the party whose declaration is in question, it is not, therefore, always to be received. He cites Prince v. Samo and Green, executor v. Anderson, (1 Bailey, 358,) and concludes by stating that, “ even if these cases are questionable, surely the rule never intended to let in a distinct subject, such as the moral character of the parties, or their standing in the neighborhood. The broad terms of the proposition would have gone to that extent.” This case does not decide that all parts of the conversation relevant to the issues could not be proved, because the facts of it, as reported, did not present such a question for adjudication. The opinion argues to the conclusion that they cannot be, as a matter of course, unless they tend to explain, qualify, or entirely obviate the effect of the parts first proved, although relevant to other issues to which such parts do not relate.
The cases in this state falling under our observation and involving the question whether, when part of one party’s conversation has been proved by the other, the former may have the whole of *127 it proved, are cases in which the additional conversation either justified the act, or showed payment, or a release of the demand, or a counter-claim growing out of the original transaction forming the subject of the action, which the parts of the conversation first proved tended to establish. It is difficult to perceive why proof, by a party’s admission that he had bought specific property, may be met by proof that he stated at the same time that he had paid for it, and yet that where a plaintiff, claiming to have two distinct demands against a defendant, proves a declaration of the defendant admitting one of them, the defendant may not be allowed to prove that he, in the same conversation and in the same breath, said he had paid the other one.
If the whole residue of the conversation relevant to any of the issues cannot be admitted as a matter of course, but only so much as qualifies, obviates the effect of, or explains the portion first proved, then the rule would seem to be merely this: A party charged by his admissions, in respect to any particular matter, may prove the whole of the admission relative to that matter. His admissions, if broad enough, may be proved, to discharge him from any specific cause of action which the parts proved by the other party tend to establish. But his declarations are not evidence in his own favor, and cannot be used to establish a defence to a cause of action, or a cause of action in his own favor, to which the parts of the same declarations proved by his adversary had no relation.
But the questions under consideration do not arise upon decisions at the trial, as to the right of a party whose conversation has been proved, in part, to have the entire residue of that conversation proved, if relevant to the issues. In this case, instead of proving declarations of the plaintiff, the defendant read part of an affidavit made by her; a document written and single, and the question is, Whether she had a right to read such other portions of it as she was permitted to read ?
A closer analogy may be thought to exist between this case, and answers to a bill in chancery when offered in evidence in another action, than between this case and oral conversations which were purely voluntary, when the party was not bound to speak, and silence could not, of itself, have prejudiced him, or affected his rights or liabilities in respect to any matter then being litigated or not being then litigated.
*128 We think there is a marked distinction between the effect of an answer, which is resorted to in the suit in which it is interposed, for proof of a particular fact which it admits, and of an answer which is introduced in another action, although between the same parties, as evidence in the cause. Under the practice in chancery, it depended on the frame of the bill whether the plaintiff made the answer evidence against him. If the bill merely stated the facts on which the right to relief was based, and a prayer for sueh relief, the answer was not evidence against the plaintiff. The allegations which it denied the complainant was bound to prove; what it admitted he need not prove, and any new matter set up it was necessary that the defendant should prove.
If a complainant, in addition to stating the facts on which Ms right to'relief depended, set up various pretences as a basis for interrogatories, and required the defendant to answer, on oath, various interrogatories contained in the bill, 'all matters contained in the answer, which were fairly responsive to the interrogatories put, were evidence in favor of the defendant. The complainant having made the defendant, quo ad hoc, a witness in the suit, all responsive allegations were evidence against the plaintiff.
This doctrine is discussed at length by Chancellor Kent in Hart v. Ten Eyck, (2d J. Ch. R. 87-93,) and by Woodworth, J., in the court for the correction of errors, in Woodcock v. Bennett, (1 Cow., 743 and 744, and note A).
In Hart v. Ten Eyck, some of the items on the debit side of the-defendant’s account were not supported by proof, unless the defendant’s answer was to be treated as evidence to establish them» The Chancellor disallowed them, holding the answer not to be-evidence in support of them. But the court for the correction of" errors held, that as the defendant was interrogated by the bill, and required to set forth an account of all just debts owing by the intestate, and how and in what manner his estate had been applied! or disposed of, the charges contained on the debit side must be allowed, unless disproved or falsified by the plaintiff.
Woodworth, J., quotes the language of Thompson, J., in Classon v. Morris, (10 J. R., 542,) that “ the respondents having thought fit to make the appellant a witness, they are bound by what he discloses, unless it is satisfactorily disproved. The answer is not to be discredited, or any presumption indulged against it, *129 on account of its being the answer of a party interested.” Wood-worth, J., adds: “this rule applies to every case where the answer is within the discovery sought.”
The Chancellor, however, seems to have entertained the opinion, that if part of an answer was read as evidence in a court of law, the whole was to be read, and observed that “ if an answer is introduced collaterally, and merely by way of evidence in chancery, it ought to be treated' precisely as in a court of law.” (2 J. Ch. R. 89, 90, 91.
The practical effect of' that rule was this: by compelling a defendant to answer interrogatories on oath; all that was said responsively to such interrogatories was evidence against the plaintiff. It did not depend upon his election whether it was to be evidence or not. His own act had made the defendant a witness, and compelled him to testify, and all that the defendant had said became evidence if responsive to the interrogatories. But any thing affirmed, which was not responsive to the allegations, although relevant to the issues, as, for instance, new matter, the defendant must prove.
But the plaintiff was at liberty to disprove, if he could, any of the responsive allegations of the defendant.
This rule did not give a party a chance to infringe another well-settled rule, and make his own declarations evidence in his own favor. But so far as the other side chose to make his declarations evidence, it secured to him the benefit of all that he had said and chose to say, with reference to the matter upon which he had been made to speak, if fairly an answer to any question to which he had been compelled to respond.
With respect to written documents of the one party, a part of which is read by the other, there are decisions to the effect that the whole is to be read if relevant to the issues.
In Lawrence v. The Ocean Ins. Co. (11 J. R. 241) the plaintiff, under an order of the court, had been compelled to produce sundry letters relative to the stay of the vessel insured at Gottenburg, and, also, various other letters concerning different events of the voyage, to and from various' persons. The defendant’s counsel offered to read sundry letters from the supercargo to the owner of the vessel, relative tooher stay at Gottenburg. The plaintiff’s counsel objected, unless the plaintiff was permitted to read all of *130 them. The defendant’s counsel insisted that reading from the correspondence, as to a particular point, would not authorize the plaintiff’s counsel to read what related to other matters wholly distinct. The Judge overruled the objection, and decided that any of the letters might be read by either party, (id. 245-246).
Thompson, J., said the production of these letters, under oath, was a proceeding “ analogous to an answer in chancery ; and it is an' invariable rule that, where an answer is given in evidence in a court of law, the party is entitled to have the whole of his answer read. It is to be received as prima facie evidence of the facts stated in it, open, however, to be rebutted by the opposite party.” (Peake’s Ev. 35-37; 4th Esp. N. P. 21).
Van Ness, J., dissented from the opinion of the court, that the plaintiff was entitled to judgment, but does not seem to have ex? pressed any dissent as to the point now under consideration,
In Walden and Walden v. Sherburne and Eakin, (15 J. R. 409,) the action was for goods sold and delivered, money had and received, money paid, and money lent and advanced. A verdict was taken for the plaintiffs, by consent, for $5000, subject to the opinion of the court on a case, and the damages were to be increased or diminished as the court should direct. The defendants, to prove a credit of $663f¡nr, on the 28th of December, 1811, produced an account rendered by the plaintiffs, which con? tained various items of credit to the plaintiffs, (id. 413). This account contained the whole of the plaintiffs’ claim, consisting of various items. Their counsel insisted that the defendants, by producing it in evidence, had furnished evidence of the whole of the plaintiffs’ claim, which would conclude them unless they disproved the items, (id. 415).
The court, by Spencer, J., said, “the defendant Sherburne, to gain a deduction from the plaintiffs’ account, produced the ac? count himself, and by doing so he made it evidence. He might, indeed, contradict or disprove it, but not doing so, it was evidence in the cause to the jury.”
If, by reading an item from an account, the whole of it is made evidence for the opposite party, of the credits in it in his own favor, then it is clear that the limitation applied in Prince v. Samo, has no application to a written document, whatever should be the •rule as to oral conversations.
*131 A plaintiff may prove all of Ms claim, consisting of several items, except one item. To prove the latter, he reads from an account rendered, or paper signed, by the defendant, an admission that such item is a valid claim. If that authorizes the defendant to read the rest of the account, or paper, as evidence of the items of credit in his own favor contained in it, it follows that he may thus not only furnish evidence of payment of the particular item which it was read to establish, but of credits in his favor which may extinguish all of the several demands against him wMch had been established by other evidence.
This point seems to have been expressly adjudged in Low v. Payne (4 Com. 247). Low sued Payne to recover a balance due upon account. The account consisted of several items, amounting to $124.26, and the account credited the defendant various sums amounting to $100.90; for the balance $28.86 he recovered judgment. On the trial, the plaintiff proved two items, amounting to $51.65, and made no proof of the other items, except by giving such proof of the plaintiff's books as in the view of the Justice made them admissible as evidence. There was no evidence of defendant’s credits, except that furnished by plaintiff’s book; .plaintiff’s book contained two charges for cash paid. The defendant insisted that these two items were not sufficiently proved. The court said:—“the defendant made no proof, but would appropriate to himself the benefit of the credits appearing on the same book, while he denies the plaintiff the full benefit of all his charges. The court below were right in the position held by them, that if the defendant would make the books evidence in Ms favor, he cannot do so without taking the whole account together. The accounts are received in that case in like manner as the oral admissions of the party, the whole of which or none must be received; the defendant is concluded by it, unless he wholly disprove the items.”
In Winants v. Sherman (3 Hill, 74) the defendant below offered Jiis books of account in evidence, in order to establish certain matters which he mentioned, under the qualification that they should not be received to prove other matters, to show which, for aught that appeared, they were equally competent. The referees decided in effect, that they could not be received with such a qualification, but must go for what they were worth as evidence generally, TMs decision was sustained by the Supreme Court.
*132 Kelly v. Dutch Church of Schenectady (2 Hill, 105) was an action by a grantee against his grantor for the breach of a covenant for quiet enjoyment, on the ground that he had been evicted at the suit of one having a paramount title. On the trial he put in evidence a bill of exceptions made and settled in the suit against him, declaring at the time that his only object was to show by what title he was evicted, and that he introduced it for no other purpose. Held, that notwithstanding his disclaimer, the defendant might use the entire contents of the bill for any purpose pertinent to his defence, viz.: to show the ground of recovery against the grantee, and that it was not under claim of title paramount in fact, but because of the grantee having precluded himself from setting up the grantor’s title in that suit.
In Vibbard v. Staats (3 Hill, 144) it was held, that a party who has proved the confessions of his adversary, cannot, by afterwards waiving such proof, preclude the latter from proving what further was said by him, on the same subject, at the same time, nor could the party proving them have them stricken from the case without the other’s consent. See Sizer v. Burt (4 Denio, 426); Morris v. Hurst (1 Wash. C. C. 433); Bell et al. v. Davidson (3 Wash. C. C. 328); Jacobs v. Farral (2 Hawks, 570); Shaller v. Brand (6 Binn. 435-438); Dennis v. Barber (6 Serg. & R. 420-425); Goss v. Quinton (3 M. & G. 825); Bessy v. Windham (6 Ad. & E. N. S. 166); Harrison v. Turner (10 Ad. & E. N. S. 482); Dagleish, assignee v. Dodd (5 Carr. & P. 238); Richards v. Frankum (9 id. 221).
Viewing the decisions o‘f the courts of this state as harmonious and explicit in stating the rule applicable to such a case, and in applying it to the cases which have been adjudicated, we cannot hold the decision made at the trial erroneous, without making a decision in conflict with them.
One party who uses a paper written, or affidavit made by the other, as evidence, cannot be surprised by the evidence which that other may furnish for himself if allowed to read the residue of it;' the one offering it knows its contents, and it is optional with himself whether he will make his adversary a witness or not.
If either chooses to make what the other has written, or sworn to, in relation to the action, evidence in his own favor, by reading a part thereof, it is difficult to assign a reason justified by good *133 faith and fair dealing between man and man, iox which any part of the residue of such paper or affidavit relevant to the matter in. controversy in such action should be excluded.
It must not unfrequently happen, that in reading other parts necessary to explain the full and exact sense and meaning of those first read, passages or expressions may be required to be read, which of themselves, may not be strictly relevant to the case, and may not be capable of affecting in any way the conclusions that are to be formed by the court or jury upon the matters in issue. As to such matters, proper instructions must.be given to a jury, if they be of a character to call for any instruction from the court.
As to all such matters which could not be supposed capable, from their nature, of influencing the verdict of a jury, it should not be deemed error to refuse to allow the party first reading from the affidavit to contradict them, because such contradiction could not be of the slightest service, and would produce no result except a profitless consumption of time.
The defendant insists that, even if he was bound to submit to the reading of the whole of the affidavit of the plaintiff, sworn the 20th December, 1850, parts of which he had read on his own behalf, it was, nevertheless, erroneous to permit the plaintiff’s affidavit of the 2d of September to be also read. The subsequent affidavit of the 20th of December is entitled in the same cause and, as above suggested, reaffirms the other. The affidavit of the plaintiff relates to the same subject; it is again and again referred to in that of the 20th of December, and by such reference and reaffirmance is as fully adopted as a part of that affidavit as it would be had its very language been inserted in the latter. The full meaning and import of the latter, and the extent of its statements and denials cannot be understood without reading the other, and a part of the affidavit of December, which the defendant himself read, contained a reference to the other. We think that these circumstances brought both affidavits within the rule above discussed. In legal acceptation, it is a part of the affidavit of December. See Tonnele v. Hall, (4 Comstk. 143,) and cases cited in the opinion of the court, showing that when a will refers to another paper, in terms that leave no doubt of its identity, such paper makes part of the will. That'such reference is the same as if it were incorporated in the will, and also that it is not mate *134 rial that the one should be annexed to the other, annexation serving no other purpose than to ensure identification, and when identified they make together one instrument, though existing in two distinct papers, whether attached together or not.
. As an expression of the sense and meaning of the plaintiff and of what she intended to say, and did in fact say, by signing and swearing to her affidavit on the 20th of December, the two affidavits are one.
If these affidavits are not to be deemed one document in any other sense, they are, we think, to be taken so far as one admission that the usé of the one of latest date, reaffirming and referring to the other, made them both evidence in the cause.
In Layburn v. Crisp (8 Carr. & Payne) it was held, that if a decree of a court of equity is put in evidence on a trial at law either party may put in the depositions upon which it is founded.
In 6 ib. 437, the defendant on a trial at law read in evidence a part of a recor-d roll of pleas of the crown containing several presentments before the justices in Eyre, it appearing that there was one roll for each hundred, but that one part referred to another part; it was held that the whole must be taken as one indictment, and that the plaintiff might' have such other parts read as he thought proper.
In Goss v. Quinton, above referred to, the assignees of a bankrupt having brought trespass, and, to prove the defendant guilty Of taking the goods in question, produced his examination before the commissioners in bankruptcy. It was ruled not only that his cross-examination was evidence but that an agreement for the purchase of the goods referred to by him on such cross-examination must be considered in evidence also; On a review of the case at bar, Tindal, Oh. J., held that the examination is an entire thing, and that if so required the plaintiff must have elected to read the whole or none.
See also Buller N. P. 238; Hewett v. Piggott (5 Carr. & Payne, 75); Yates v. Carnsew, (3 ib. 99).
The case of Lawrence v. Ocean Ins. Co., (11 I. R. 242,) above referred to, tends to the same result. And the cases already cited showing that when the plaintiff reads part of the defendant’s answer in another suit, the defendant may avail himself of it as evidence in his own favor, upon the ground that “ all is evidence *135 or none,” cannot be confined in their application to the mere body of the answer; whatever is annexed thereto, or forms part thereof, is plainly within the rule. See Lynch v. Clerke (3 Salk. 154); Earl of Bath v. Bathersee (5 Mad. 10); Blount v. Burrow (4 Brown, Ch. C. 75); Clapp v. Wilson (5 Denio, 285); Smith v. Blandy, et al. (1 Ryan & Moody, 257).
The parts of the defendant’s own affidavit, which he offered to read, and which the Judge at the trial excluded, were not necessary to be read to explain any parts of the affidavit of the plaintiff; they would in no wise tend to explain; they consist, mainly, of a denial of the truth of some of the statements read from the plaintiff’s affidavit,
The reading of them was refused on the ground that they contained allegations not necessary to a full understanding of the statements which had been read from the affidavit of the plaintiff. And if there were any parts of the defendant’s affidavits which might have been made more intelligible by any portions of the plaintiff’s affidavit, (which we do not perceive,) the offer made by the plaintiff’s counsel, withdrawing all objection to their being read on their being pointed out, seems to us to have satisfied every reasonable requirement. Indeed the offer went further, and conceded to the defendant the liberty to read not only all such parts of his own affidavit as would explain, but also such as were an answer to the plaintiff’s affidavit of September 2, 1850.
(Points 12 to 22, inclusive, omitted.)

Defendants Twenty-third Point.

“ The court erred in allowing the copy of the letter annexed to the deposition of John W. Forney to be read in evidence, as it did not appear that the original was lost, or in whose possession it was, or but that the plaintiff, with ordinary diligence, might obtain it.”
Mr. Forney was examined, and testified that he wrote a letter to a Mr. Roberts, by the defendant’s authority and with his assent, but was not perfectly certain that defendant saw it before it was sent. He annexed a copy of it to his deposition. Plaintiff’s counsel offered to read it in evidence.
“ Defendant’s counsel objected that such paper was not suffi *136 ciently identified, and that the original ought to have been produced to witness, or its loss shown, or its absence accounted for.”
Plaintiff’s counsel then read the deposition of said Roberts, taken in Boston. He testified that he resided in Boston, that he knew Mr. Eorney, and did receive from him a letter containing an allusion to, or statement concerning, Mrs. Forrest. He further testified thus:
“ The letter aforesaid is not in my possession, nor under my control, although I suppose I could obtain the control of it. I have placed it in the hands of other parties, and I decline to produce the same to the commissioner, to be annexed to my deposition. It contains matter of private concern, not relating to the parties to this suit, which I decline to make public; it is a private letter, strictly so, and I cannot divulge its contents without the writer’s consent.”
The plaintiff’s counsel, thereupon, again offered to read the copy in evidence.
“ The defendant’s counsel renewed his said previous objection to the reading of said paper annexed to the deposition of John W. Forney, (marked A,) but the Justice overruled such objection, and the defendant’s counsel excepted, and it was read by the plaintiff’s counsel.”
If the objection taken to reading the copy is to be understood as meaning that Mr. Forney could not, on commission, be examined as to the contents of the letter he wrote, without having the original before him, or its being first proved that the' original was lost or could not be produced on such examination of Mr. Forney, it is clearly untenable.
The object of proving that he wrote a letter to Roberts by defendant’s authority, and the contents of it, was, that the plaintiff might be in a position to read the copy at the trial, on showing there that the original was lost or could not be produced. If the objection cannot be construed as taking any other objection to the reading of the copy, than that Forney had not the letter before him when testifying, and that it was not proved before he testified to the contents of it, that it was lost or could not be produced, the exception is untenable.
If the defendant cannot be considered as having objected that no such evidence was.given at -the trial of the loss of the letter, *137 or of an inability to produce it, as would authorize a copy of "it to be read, then no point is presented for our consideration.
If he may be considered as having taken that objection, then the evidence shows that it was sent into the state of Massachusetts and continued there, and the party having the control of it refused to annex it to his deposition. It was not shown that there were any means within the power of the plaintiff by which the production of it could be compelled.
We think the non-production of an original paper is sufficiently accounted for to admit parol evidence of its contents, when it is shown to be in the possession of a party out of the state, and that all the means which it appears are within the power of the party to compel its production have been employed, and the person having it peremptorily refuses to produce it, especially when it is not made to appear that, by the laws of the state in which he resides, he can be compelled to surrender the possession of it, that it may be used in the courts of this state. (United States v. Reybwrn, 6 Peters, 352; Bailey v. Johnson, 9 Oowen, 115; Ralph v. Brown, 3 Watts and Serg., 395; Boyle v. Wiseman, 29 Eng. L. and Eq. R., 473.)
Point twenty-four omitted.

Defendants Twenty fifth Point.

The defendant insists that the court erred in allowing testimony to be given, tending to show the value of the defendant’s real estate, and in submitting to the jury the question, What amount of alimony ought to be allowed to the plaintiff?
At the close of the evidence relating to the question of the guilt or innocence of the parties, or either of them, the plaintiff “ offered and proposed to prove the value of the real estate belonging to the defendant, for the purpose of submitting to the jury the question as to the amount of alimony to which the plaintiff should be entitled in case a verdict was found in her favor on the issues now tried.” The defendant’s counsel objected to the introduction of "any evidence to the jury as to the value of the property of the defendant. The court overruled the objection, and the defendant’s counsel excepted.
Thereupon the plaintiff recalled a witness, Thomas' Whitely, who gave evidence- touching the value of the defendant’s real *138 estate, which he described, and the value of the several parcels as estimated by him, amounting in' all to from $144,000 to $167,000.
Under the provisions of the Revised Statutes, when a bill was filed for a divorce on the ground of adultery, if the offence charged be denied, the Court of Chancery was directed unqualifiedly to direct a feigned issue to be made up for the trial of the facts, contested by the pleadings, by a jury of the country. (2 Revised Statutes, 145, § 39, [40]).
This action was commenced on or about the 10th of November, 1850, and the cause was at issue by the putting in of a reply to the defendant’s answer on or about the 21st day of December, 1850.
At that time the terms of the Code relating to issues and the mode of trial declared that an issue of fact, in an action for the recovery of money only, or of specific, real, or personal property, (§ 253), must be tried by a jury, and that every other issue is triable by the court (§ 254); which, however, may order the whole issue, or any specific question of fact involved therein, to be tried by a jury, etc. By section 72 of the Code, it was also declared that “feigned issues are abolished, and instead thereof, in the cases where the power now exists to order a feigned issue, or where a question of fact, not put in issue by the pleadings, is to be tried by a jury, an order for the trial may be made, stating distinctly and plainly the question of fact to' be tried, and such order shall be the only authority necessary for a trial.”
It is obvious that under these provisions of the Code the only change made by the legislature in the mode of trial of an action for a divorce on the ground of adultery, by a jury, was a direction that instead of a feigned issue an order for the trial must be made, stating distinctly and plainly the questions of fact to be tried.
And these sections of the Code, read in connection with the section of the Revised Statutes above referred to, produce a result, in actions for divorce, which may be stated thus: “ Where the power now exists to order a feigned issue,” (Code, § 72,) i. e. “If the offence charged be denied (2 Revised Statutes, 145, § 39 [40]), an order must be made (Code, § 72) for the trial of the facts contested by the pleadings.” (2 Revised Statutes, ut supra.)
The Statute existing before the Code having made a trial of *139 the facts contested by the pleadings before a jury a peremptory requirement, it remained so after the Code, substituting an order in the place of the fiction used for that purpose under the former chancery practice.
In this condition of the Statutes on the subject, the order for the trial of the specific questions of fact contested by the pleadings in the present action was made.
Before those questions were brought to trial, in the Session of 1851 the language of the Code was amended.
This gave rise to the doubt which appears to have influenced the conduct of the present trial.
That doubt seems to have been suggested by the amended phraseology of § 252 (Sec. 253 of Code, of 1852), in these terms: “ An issue of fact in an action * * * for a divorce from the marriage contract on the ground of adultery, must be tried by a jury.”
It is quite clear to our minds, that by the amendment of this section, no change was made in the law regulating the trial of this case in respect to the questions to be tried.
Under the Revised Statutes, and the Code as it stood in 1849 and 1850, “the facts contested by the pleadings” were to be tried by a jury, in pursuance of an order for such trial, stating plainly and distinctly the questions of fact to be tried.
By the amendment of 1851, “ an issue of fact” in an action for a divorce * * * must be tried by a jury; and by section 259, an issue of fact arises “ upon a material allegation in the complaint controverted by the answer, or upon new matter in the answer controverted by the reply, or upon new matter in the reply,” which, by section 168, is to be taken as controverted. It need hardly be added, that under this definition, in section 259, an “ issue of fact,” which is to be tried by a jury, is equivalent to the language of the Revised Statutes, “ the facts contested by the pleadings” must be tried by a jury.
Whether the phraseology of the 253d [252] section now dispenses with the order stating the questions of fact to be tried, it is not necessary to say. If the amendment of that section has not dispensed with such an order, then the questions were properly submitted to the jury under the order made for that purpose. If by such amendment the order is dispensed with, it was, nevertheless, regular and proper to submit the same questions to the *140 jury to be answered specifically, because the 261st section of the Code, in terms, authorizes the court, in all cases, to instruct the jury to find upon particular questions of fact stated in writing. Both before and since-the amendment of 1851, the questions of fact contested by the pleadings, or which is the same thing, the allegations of one party controverted by the other, are to be tried by a jury; and neither before nor since the Code was it necessary to submit to the jury any other questions.
Recurring to the complaint in this action, it appears that the plaintiff, after setting forth the charges upon which she asserts her title to a decree, further avers that the defendant is possessed of sundry lands and the improvements thereon specifically named in the complaint, and also of personal estate of large value, and that the real and personal estates of the defendant are of the value of $200,000 at the least, and that the clear annual income received therefrom by the defendant is not less than six thousand dollars ($6000).
Upon the whole complaint, after praying-for a dissolution of the marriage contract, the plaintiff also prays that the defendant provide a suitable allowance for her support, and that such judgment for such allowance direct the same to be paid or made out of the property of the defendant, and be made a charge or lien upon his real estate within the state of New York.
The defendant, by his answer, after denying the charges of the plaintiff, and setting up recriminatory charges as a ground for his claim to be divorced from the plaintiff, avers that a certain portion of his real property contains only about fifty-four acres instead of seventy-four as charged by the plaintiff, and denies that his real and personal property is worth more than $150,000, or that his clear yearly income therefrom exceeds four thousand dollars ($4000).
Upon the trial, the presiding Judge, instead of submitting to the jury the questions raised by the allegations and denials above stated, (viz., what is the value of the real, and personal property of the defendant, and what is the clear yearly income therefrom ?) submitted in addition to the questions which had been previously ordered to be tried, the distinct question, “ 8th, what amount of alimony ought to be allowed annually to the said plaintiff?”
The objections made by the defendant on the trial, .and his.ex *141 ceptions to the ruling of the court in relation to this subject, were two in number. 1st. He objected to the introduction of any evidence to the jury as to the value of the property of the defendant'. The court, nevertheless, received the evidence of the witness, Thomas Whitely, upon that subject. 2d. The defendant’s counsel excepted to the submission of the 8th question above mentioned to the jury.
In relation to the admission of the evidence, it is to be noticed that the offer of the evidence was limited to a specific purpose, and it was received for that purpose only, viz.: “ for the purpose of submitting to the jury the question as to the amount of alimony to which the plaintiff should be entitled in case a verdict should be found in her favor.”
If it was proper to submit that question to the jury, then the evidence was relevant and proper. This is not, and cannot be denied. H that question, in'the precise form in which it was put, was not a proper one for the decision of the jury, then the admission of the evidence forms no ground, we think, for setting aside the verdict, because, confined as it was to the specific purpose for which it was introduced, it was wholly immaterial and superfluous as respects any other issue. We think'that it could not have had any influence upon the verdict in any other respect.
Before the Code, no issue was formed between the parties upon the question of alimony; the facts constituting the grounds of the claim of the party to a divorce, when denied, and the respective allegations of the parties, bearing upon those questions were the subject of the feigned issue, and to be passed upon by the jury, (2 R. S. 145, §§ 39, [40]), and if upon the verdict rendered upon those issues, a decree dissolving the marriage contract was pronounced, the court was authorized to make a further decree to provide for the support of the complainant, (§§ 44, [45]), and not only for her support, but also to compel the defendant to provide for the maintenance of the children of the marriage, and the allowance is to be such as the court shall deem just, having regard to the circumstances of the parties respectively.
Hpon an attentive consideration of the subject, we are satisfied that the provisions of the Code have made no alteration in the course of proceeding in this respect, rendering it necessary or proper to submit the question of alimony to the jury. It was no *142 more their province to determine what further order should be made for the support of the plaintiff than it would be to decide what order should be made to provide for the maintenance of «the children of the marriage, if any there were. These are matters for the determination of the court. The provisions of § 44 [45] are above stated, and by § 58 [59] of the 5th article, (2 R. S. 148,) containing general provisions relating to the subject, the court may, when the wife is complainant, during the pendency of the action, or at its final hearing, or afterwards, as occasion may require, make such order as between the parties, for the care, custody, and education of the children of the marriage as may seem necessary and proper, and" may at any time thereafter annul, vary, or modify such order, and by § 59 [60] the court may require security, or may sequester the defendant’s personal estate, and the rents, etc., of his real estate, and cause them to be applied “towards such maintenance and allowance as to the court shall, from time to time, seem just and reasonable.”
Under the similar provisions of the Revised Laws of 1813 (vol. ii., pp. 198-9, §§ 4, 5, etc.) Chancellor Kent held, that it is in the power and discretion of 'the court to vary the allowance from time to time, according to the circumstances of the parties, and decreed leave to apply to the court for that purpose, “ as future circumstances may dictate to be just,” Miller v. Miller (6 John. Ch. R. 91, 94); so in Holmes v. Holmes (4 Barb. S. C. Rep. 295). Mr. Justice Barculo, under similar provisions relating to a divorce a mensa et thoro, modified the order directing the husband to provide alimony, making its relinquishment a condition of the order excluding the husband from the proceeds of property subsequently accruing to the wife; and in Lawrence v. Lawrence (3 Paige, 267, a. d. 1832,) the Chancellor held, that the proportion of the husband’s property or income which is to be allowed to the wife as alimony, either pendente lite, or after the terroination of the suit, is in the discretion of the court. The language of the Chancellor, as well as the language of the statute itself, (§ 44 [45], and § 53 [54],) warrant no distinction in this respect between an action foy a divorce a vinculo matrimonii, and a divorce a mensa et thoro, and the Chancellor adds, that, in fixing the amount to be allowed, the court must take into consideration the nature of the husband’s means, the situation of the parties in society, the amount of his *143 income, and whether it is from property already acquired or from his personal and daily exertions; whether there are or are not children or other relations of the husband who have claims upon him for sustenance, etc., the husband’s ability to support himself, and family, etc.
Neither these circumstances, nor the discretion which was to be exercised thereupon, were the subjects of inquiry under the feigned issue directed by § 39 [40] of the statute. That by the terms of the statute, related to the offence charged, and by it were tried and determined the facts upon which the rights to a dissolution of the marriage contract depended. In practice, the court in settling the feigned issues, inserted therein inquiries into the matters set up as a defence, as well as the inquiry into the offence charged in the bill, (see Ch’y Ct. Rules, 168,) and added an inquiry into the legitimacy of the issue of the marriage, when that question was distinctly made in the bill of complaint, and which the statute directs shall be determined upon the proofs in the cause.(Cross v. Cross, 3 Paige, 140; Wood v. Wood, 2 Paige, 109; Smith v. Smith, 4 Paige, 435, rule 169). Nothing in the statute, nor in the practice of the court, made it the duty of the court to embrace in the feigned issue the amount of alimony, or the facts upon which it depended. But after the trial of the feigned issue, the cause was brought regularly to a hearing at a stated term of the court, at which, if a decree of divorce was granted, such further decree was made in respect to alimony, and the care, custody, etc., of the children, if any, as seemed just in the discretion of the court, (rule 170, Daggett v. Daggett, 5 Paige, 509,) and a reference, for the purpose of ascertaining what was proper, was made if necessary (Green v. Green, 2 Paige, 62; 2 Barb. Chy. Practice, 259, 260, and cases cited, pp. 267-8.) The case of Burr v. Burr, in 7 Hill, 208, shows that the subject of alimony rests in the discretion of the court in the fullest manner.
As already suggested, the provisions of the Revised Statutes on this subject are unrepealed, and, with the single difference that a feigned issue is no longer proper, the practice under the statute does not appear to us to be changed. The questions to be tried by the jury remain the same. The facts contested by the pleadings before the Code, were the material allegations going to the design and object of the bill, to wit: the decree of divorce; the *144 “ farther decree” consequent thereon was then, and is now, for the determination of the court, under all the circumstances of the case, and the situation of the parties, embracing various facts which formed no subject of allegation in the complaint or answer, and not the subject of consideration at all until it was first determined whether a divorce should or should not be granted. (See also Forms of Bills of Divorce, 2 Hoffman Chy. Practice; 2 Barb. Chy. Practice, and other books of precedents.)
And that the practice on this subject is not altered by the 253d [252d] section of the Code, directing that an issue of fact in an action for a divorce shall be tried by a jury, farther appears by the rules adopted by the Judges of the several courts in 1852 and 1854, (rule 70 [71],) which require the cause to be heard at a Special Term after the trial of the issue.
Our conclusion, therefore, is, that the “material allegations in the complaint controverted by the answer,” (Code, § 250,) which constitute an issue of fact to be tried by a jury in an action for a divorce from the marriage contract on the ground of adultery, (Code, 253,) are those allegations in the complaint upon which the right to the decree for a divorce depends. These, and these only, are a necessary part of such a complaint. The circumstances which, in a subsequent stage of the proceedings, are to regulate the discretion of the court in its further decree awarding alimony, are not necessarily nor regularly any part of the issues between the parties; they are matters which, at a proper time, and in such form as may be thought proper, are to be laid before the court itself, for the guidance of its discretion in a matter with which the jury have nothing to do.
We do not find it necessary to say that the allegations in the present complaint, respecting the amount and value of the defendant’s property, and the income therefrom, and the defendant’s denials, addressed to those subjects, were wholly irrelevant, or should have been' struck out on motion. It has been, by some of the decisions under the Code, held that any facts may be stated in the complaint which may affect the ultimate relief to which the plaintiff may be entitled, and even such as may, in an equity suit, affect the question of costs only. We think, however, that the introduction of such averments in an action for divorce in nowise enlarged the issues which the statutes require should be submitted *145 to the jury. They are in no sense the “facts constituting the plaintiff’s cause of action (Code, § 142). They are not facts which the plaintiff must prove in order to maintain her suit; and, in our judgment, it is the better practice not to insert them in the complaint at all.
Nor do we find it necessary to say that the court, under its general authority to propose questions to the jury, might not (under § 71, or under § 261) have directed the jury to find specially what is the amount and annual value of the defendant’s property, with a view to use such finding as one of the elements to be afterwards considered in connection with other circumstances in determining what the further decree, in regard to alimony, should award to the plaintiff. We doubt whether in practice that would be deemed the best mode of conducting the trial of the main questions, which, where there are recriminatory charges and allegations of condonation, are already sufficiently complicated. When the value and income of the defendant’s property are found there remain other matters to be considered and facts to be taken into view to enable the court to determine what shall be such further decree, as already above suggested. On this point it must suffice to say that no such question was in this case ordered to be tried by the jury pursuant to § 71, and no such question was submitted by the Judge on the trial under § 261. The comprehensive question—what alimony ought to be allowed to the plaintiff?—. which the Judge did submit to the jury, was a question involving not only an inquiry into the amount and value of the defendant’s property but many other considerations, and we cannot resist the conviction already expressed that this question was for the court and not for the jury.
The result is, that evidence was suffered to go to the jury tending to prove the value of the defendant’s real estate, when for the purposes of any question properly submitted to the jury such evidence was wholly irrelevant.
If we could see that evidence showing the defendant’s real estate tobe worth from $144,000 to $167,000, by any rational view of what is possible, could have influenced the minds of a jury unfavorably towards him upon the question whether he had or had not committed adultery, or whether the plaintiff was or was not guilty, we might feel bound to order a new trial because *146 such evidence was received. (Marquand v. Webb, 16 J. R. 90; Osgood v. Manhattan Co. 3 Cow. 612; People v. Wiley, 3 Hill, 194; Weeks v. Lowerre, 8 Barb. 534; Clark v. Vorce, 19 Wend. 232; Dresser v. Amworth, 9 Barb. 625; Myers v. Malcolm, 6 Hill, 296; Boyle v. Colman, 13 Barb. 42; Worrall v. Parmelee, 1 Coms. 520; Cary v. Sprague, 12 Wend. 41.)
The cases cited, and others therein referred to, warrant us in saying that where the admission of the evidence, on its face and by legal necessity, could do no injury, because it does not bear in the least degree on the question in issue, it may be disregarded. Here it was not offered, nor received, for any purpose affecting the main issue, and it was so expressly stated, and only received under that limitation.
For the purposes of such an inquiry as this the jury must be assumed to have ordinary intelligence, and to be governed by conscientious motives. To suppose that proof that the defendant was worth $144,000 could affect their determination of the question whether he or the plaintiff had committed adultery, is to deny to the jury, as we think, common sense; and to suppose that they would allow such evidence, when received for another and totally distinct object, to influence them improperly on this question, is to deny them common honesty. We think, for this reason, that the admission of the testimony furnishes no ground for revoking the judgment. If we are in error in our conclusion, that the amount of .alimomy was not a question proper to be submitted to the jury, then it is obvious that the testimony so admitted was competent, because it tended directly to one of the chief elements taken into view in determining that question.
The next inquiry is, whether the judgment should be reversed because the question, what amount of alimony ought to be allowed to the plaintiff, was submitted to the jury. We have no hesitation in saying that it ought not, although we are of opinion that the jury were not to determine that question between these parties, and that for the purposes of the trial their views upon that question were immaterial. We cannot discover or imagine that any injury resulted to the defendant from telling their opinion upon that subject, unless the court made it the basis of the further decree for alimony afterwards made, which subject will be presently considered. •
*147 The jury having found upon the questions upon which the right to a divorce depended, it was, at most, superfluous to ask them to say what alimony should be awarded. Their finding upon the latter question had no possible bearing upon the former.
Under § 261 of the Code, a discretion is given to the court to instruct the jury in all cases to find upon particular questions of fact. If the verdict is in other respects correct, it would be unreasonable to say that it must be set aside if the court should take a finding from the jury upon a matter that was in truth irrelevant, which could not influence the general verdict or the finding upon the other questions.
On that subject the general rule must be that it rests in the discretion of the Judge to submit such questions as at the time he thinks proper, and if upon the whole verdict the plaintiff is entitled to judgment, the circumstance that in addition to a finding upon material questions wb have also a finding upon some that are not material to any determination proper to be made by the jury, ought not to vitiate the verdict. So that we say, as in relation to the last point discussed, If we err in holding that this was not a proper question to be submitted to the jury, then of course the defendant’s exception fails; and if we are right, then the submission of the question to the jury, and their finding thereon, was mere surplusage, it injured no one and should be wholly disregarded.

Defendant's Twenty-sixth and Twenty-seventh Points.

It remains to consider, under the defendant’s appeal, the proceedings had after the coming in of the verdict, in which the jury had found that $3,000 ought to be allowed to the plaintiff, and to which the defendant’s 26th and 27th points are addressed. The bill of exceptions states that the cause having been brought on for further hearing for the judgment of the court, the defendant’s counsel claimed and insisted—
That the court was not authorized to make any award of alimony “upon the matters aforesaid.”
If by this was meant that the court was not authorized to award alimony at all, this claim was plainly unwarranted and in the very face of the statute.
If it was meant that there was an irregularity in the manner ef *148 bringing on the cause for a further hearing, then we can only say that the objection for want of regularity should have called the attention of the court to the supposed irregularity.
If it was meant that the jury, and not the court, were to determine the question, the views above expressed dispose of that objection, and we may add that if it was a question for the jury their finding was of the precise amount the court awarded.
If it was meant that the case was not in readiness for such further decree, that the proper inquiry had not yet been made by the court, and that the verdict of the jury on this point ought not to be taken into view, it being without their province, and that a reference to ascertain the facts bearing on the question, or a taking of proofs by the court, in some manner, so that the defendant might produce witnesses as to the value not only, but also as to the income of the defendant’s property, and to the other various circumstances which, as above stated, are to be considered by the court in determining the amount of alimony:
If this was the meaning of the objection—and though not very clearly expressed it seems to us to warrant that construction—it was reasonable.
The language of the subsequent objections, to wit: That three thousand dollars a year was extravagant and unreasonable; that alimony should be only allowed from the date of the decree,' and that if alimony should be awarded from the date of the filing of the bill of complaint, the voluntary provision made by the defendant for the plaintiff’s support, from the time of the commencement of the suit until the date of the decree, should be taken into view, seem to indicate that further inquiry was insisted upon.
Although the cases above referred to show that the extent of the allowance rests in the discretion of the court, the cases on this subject do not show that, in general, the permanent alimony is to take effect from the filing of the bill. In most of the cases the permanent provision is made to commence at, or about, the time of the decree for a divorce. (Miller v. Miller, 6.J. Chy. R. 93 ; Packford v. Packford, 1 Paige, 274; and see, also, Lawrence v. Lawrence, 3 Paige, 267, and other cases above referred to.) In Richmond v. Richmond, (1 Green’s New Jersey Chy. R. 90,) it is held that there is no fixed rule as to the amount; that each case depends upon its own circumstances; that a regard should be had *149 to the actual rents and profits of the defendant’s estate, and the actual wants of the complainant, but not solely to those considerations; and in estimating such rents and profits, the estimate should be taken not by its value at the filing of the bill, but at the date of the Master’s report. And, on the other hand, in Burr v. Burr, (10 Paige, 38,) the Chancellor directed explicitly that the alimony should commence from the filing of the bill, (in that respect correcting the decree made by the Vice-Chancellor, which allowed alimony only from the date thereof). And his decree, in this respect, is affirmed on a full discussion of the subject by the court of errors. (7 Hill, 208). Rut the Chancellor directed that the ad interim alimony, received by her or her solicitor pendente lite, be deducted. (See Rose v. Rose, 11 Paige, 166.) Our conclusion is, that it was not erroneous to allow alimony from the time when the suit was commenced if, under all the circumstances, that seemed just to the court. There was no evidence produced on this further hearing, in relation to the voluntary payments by the defendant pending the suit, unless it be, perhaps, the statements of the witnesses, and the affidavits read on the trial, or found in the minutes of the court, and these do not appear to have been referred to as the basis of the further decree. The court are represented as deciding that alimony should be allowed without any deduction for such voluntary payments. If the facts on this point were agreed to by counsel, it does not so appear; and it is quite- difficult to say, upon the statement contained in the bill of exceptions, whether any thing was before the court as the ground of the order, except the pleadings in the action and the verdict of the jury. The decree of the court, however, states that the court, “ upon consideration of the facts admitted by the defendant in the pleadings,” determined that the allowance of three thousand dollars a year, from the day this action was commenced, during the natural life of the plaintiff, is just, “having regard to the circumstances of the parties respectively,” and ordered and adjudged, etc., accordingly.
. We have already said that we think the verdict of the jury furnished no proper guide on this question, and the only admissions in the pleadings are that the defendant’s real and personal estate is worth one hundred and fifty thousand dollars, and the income therefrom is four thousand dollam
*150 Upon this part of the case, we think an opportunity should have been permitted to the defendant to produce proofs, and either on a reference, or on a hearing before the court, show the facts and circumstances which are proper to be considered in determining the amount of alimony, the time when it should commence, and whether any, and what, voluntary or other allowance pendente lite had been made to the plaintiff by the defendant. The views which we entertain in regard to the points raised by the plaintiff’s appeal from the decree herein, confirm us in our opinion that this portion of the decree should be the subject of further inquiry. It seems to us, that that part of the decree which requires the plaintiff to release her inchoate right of dower in the defendant’s real estate, must necessarily be taken to have influenced the court in fixing the amount of the plaintiff’s allowance during her life, and our conclusions in regard to that requirement of the decree, render it necessary that the provision to be made in regard to alimony should be the subject'of inquiry, if the defendant -shall elect to have a reference for that purpose.
We have only to notice the further exception to that requirement of -the decree, which directs that the defendant give security for the payment of the allowance by a lien upon his real estate, within this state or otherwise, as may be directed by the court upon the carrying in of the report of the clerk of this court, to whom the matter is referred. No objection to this part of the decree was urged upon us, on the argument of the appeal. The statute, in terms, authorizes the court to require such security. (2 R. S. 148, §§ 59, [60] 60). The practice of the Court of Chancery, in like cases, sanctions it, (Miller v. Miller, 6 J. Chy. R. 93; Burr v. Burr, 10 Paige, 38, and other cases above referred to) ; and the decree, in this respect. It was within the ordinary power of the court to refer a matter of that description, if it was found convenient.
If, however, the defendant shall elect to have a reference to determine the amount of alimony, the security to be given therefor can be included in the same reference.
The order herein will therefore be, so far as it is based upon the defendant’s appeal, that the judgment be reversed, so far as it determines the amount of the alimony to be awarded to the plaintiff, and the time from which it is to be allowed; and a reference *151 is ordered to some proper person, to be agreed upon, or appointed by the court on settling the order, unless the defendant shall prefer to allow the judgment in this report to stand, and shall so elect. The same referee may also, as above suggested, inquire into and report what security should be given.

Plaintiff's Appeal.

The points raised by the defendant upon his appeal, being considered, there remains for determination the exceptions taken by the plaintiff to the decree made on the final hearing.
The decree, after directing the payment to the plaintiff of $3000 by way of annual allowance, and requiring the defendant to give security for the payment thereof, etc., ordered, that whenever the right of appeal shall have been determined, either by lapse of time, affirmance by the court of last resort, or a voluntary waiver of the right to appeal, and upon tendering to the plaintiff the required security for the payment of the allowance aforesaid, “then the plaintiff shall execute and deliver to the said defendant a release of any claim of dower in his real estate in such form as any Justice of this court shall settle and approve.”
To this part of the decree the plaintiff's counsel excepted, insisting that no provision should be inserted concerning dower, or if any, that such provision should do no more than give the plaintiff her election, when her right to dower should become absolute by her surviving her husband, whether she will take such dower, or continue to receive the allowance now ordered in lieu thereof.
We cannot resist the conviction, that the court erred in forcing upon the plaintiff this condition. According to the face of the decree, the court, upon the pleadings alone, and upon the defendant’s admissions therein, without any proof of the present, or probable prospective income derivable from the defendant’s real estate, and without any reference to its possible increase in value and productiveness, or the further acquisitions of the defendant, arbitrarily requires the plaintiff to relinquish all claim to dower therein, and to this the court left her no alternative, unless it be to refuse to take the divorce itself. No doubt the court deemed $3000 a year of more value to ’ the plaintiff, beginning from the commencement of this action, than her inchoate right of dower, but even the option to decline the alimony ordered) and retain her *152 right to dower, does, not appear to have been tendered to her. As the judgment stands, the divorce is decreed, and she is peremptorily required to relinquish her right of dower. How her release mentioned in the decree is to operate, whether she has such an interest or right as would pass to the plaintiff by a mere release to him so as to exonerate the land, we need not inquire. The object of the decree was clearly to require such a release as should forever preclude any claim of dower in future. We apprehend that it is now well settled, that the right' of a wife to dower in her husband’s real estate cannot be prejudiced by any act of his.
It was for some time doubted whether, under our statutes, a woman divorced a vinculo matrimonii had dower in the real estate of her former husband at his death.
The statute, (1 R. S. 740, 741,) after providing for the endowment of a widow with the third part of all the lands whereof her husband was seized, etc., at any time during the marriage, provides, in § 8, “in case of divorce dissolving the marriage contract for the misconduct of the wife, she shall not be endowed.” Chancellor Kent, in his Commentaries, vol. iv., pp. 53-4, and notes, regards this provision as needless, because a divorce a vinculo matrimonii always barred the -dower of the wife at common law, since “ she must have been the wife at the death of the husband.”
Similar language, in the statute concerning divorces, (2 R. S. 146, § 47 [48],) provides that “ a wife, being a defendant in a suit for a divorce brought by her husband, and convicted of adultery, shall not -be entitled to dower,” etc. notwithstanding the apparent implication from the two statutes, that she would be entitled to dower in all other cases than the one expressly named, viz., a divorce obtained against her for her own adultery, or other misconduct warranting such a divorce, Vice-Chancellor McCoun, in Day v. West (2 Edwards, 596), says: “where she proceeds against her husband and obtains a divorce a vinculo, all right to dower is gone, because of the dissolution of the marriage, and the relation of husband and wife. Since it is essential to dower that the marriage should subsist at the death of the husband, she cannot have dower if not the wife of the man in whose lands she claims it at the time of his death.” The reasoning of the court in Reynolds v. Reynolds (24 Wend. 193) seems to warrant such-a *153 conclusion, as also Cooper v. Whitney (3 Hill, 99); see also Cherraud v. Cherraud (1 Leg. Obs. 134), and cases therein cited to the rule of the common law on this subject. But in Burr v. Burr (10 Paige, 25-6), the opinion of Vice-Chancellor Willard suggests that such is not the rule under the Revised Statutes; on the contrary, that when the wife obtains a divorce from her husband on the ground of his adultery, she is still entitled, on his death, to dower.
And finally, in Wait v. Wait (4 Com. 95), after a full discussion of the subject, it is definitely settled by the court of last resort, that a divorce dissolving the marriage contract on the ground of the adultery of the husband does not deprive the wife of her right of dower in his real estate. We cannot discover, then, upon what ground this decree compelling her to relinquish a right, secured to her by statute, can be sustained. The opinion of the Court of Appeals in the case last cited, shows that the alimony contemplated by the statute is not to be taken as in lieu of dower. In Burr v. Burr, also above cited, the fact that the wife, if she survived her husband, would be entitled to dower, was taken into view in the court below, and neither in the Court of Chancery, nor Court of Appeals, was any doubt expressed of the correctness of the Vice-Chancellor’s conclusion.
We apprehend that the right of the plaintiff to dower, in the event she shall survive the defendant, is given by statute. That her right to allowance, under the circumstances of this case, (having established her title to a divorce,) is clear, and that the court cannot make the release of her right of dower a condition of granting the divorce, or impose the execution of such a release upon her peremptorily.
It is true that the subject of alimony rests in the discretion of the court, but as said in Burr v. Burr (in 7th Hill) that discretion is a judicial discretion and not an arbitrary one, and although the ultimate right of dower in the defendant’s real estate, if the plaintiff survive the defendant, may be taken into view in fixing the amount of alimony, there is nothing in the statute which warrants the court in compelling her to relinquish that right, nor has the practice of the court heretofore sanctioned the imposition of any such terms upon the plaintiff.
- When the property of the husband consists 'chiefly of personal *154 estate, entirely subject to the husband’s disposal in his lifetime, or by will, the inchoate. right of dower should properly have little influence on this question; and when, on the other hand, his property consists chiefly of real estate, her dower in which, in the event 'of her surviving her husband, would be sufficient for her comfortable support, the fact should be deemed entitled to much weight in determining the extent of alimony.
And we have no doubt of the propriety of accompanying the award of alimony with a provision that, in case of the death of the husband, the same may be modified as may be just, in view of the right which will thus become absolute in the defendant to have one-third of the rents and profits of such real estate during the residue of her life. Indeed, we are disposed to adopt the view suggested in some of the cases referred to in the foregoing discussion of the points taken on the defendant’s appeal, that the award of alimony is subject to modifications from time to time, as may be just, and that leave should be given, in the decree, to apply for such modifications as the changing circumstances of the parties,- and especially the death of the defendant, and the accruing of an absolute title to dower, may render just.
Our conclusion, then, upon this appeal by the plaintiff, coincides with our conclusion under the appeal by the defendant, and is that the decree, so far as relates to alimony and no further, should be set aside, and the parties be permitted a further hearing upon that subject. If, however, the defendant prefers that the decree, so far as relates to the amount of alimony, should stand, then the only modification necessary is to reverse that part of the decree from which the plaintiff has appealed.