By the Court—Woodruff, J.
On the thirty-first day of January, 1852, a judgment was rendered in this Court *651 dissolving the contract of marriage between the parties to this suit.
On the defendant’s appeal to the General Term, that judgment was, on the twenty-fourth of July, 1856,* and upon a review of all the proceedings theretofore had in the cause which such appeal brought before the Oourt, duly affirmed, except so far as it fixed the amount of alimony to be paid by the defendant, and the times and manner of payment, the security to be given therefor and the conditions thereof imposed on the plaintiff.
And it was thereupon directed that it be referred to Alvin 0. Bradley, Esq., to inquire and report what would be a suitable allowance, and at what times and in what manner it should be paid, and what security for the payment of the allowance would be reasonable. The Beferee was directed to report the facts found, with his opinion thereon, and all proofs received, and any rejection of proof offered.
The reference has been had, the report of the Beferee has come in, containing the facts found, the opinion of the Beferee, the proofs taken, and a statement of whatever evidence was rejected.
The case was thereupon brought to a further hearing, and on the twenty-first day of May, 1860, all exceptions to the report being overruled, the same was confirmed except in one particular, viz., that there should be allowed to the defendant, as a credit against the arrears of alimony, whatever sums he had, pending the suit, paid as temporary alimony under the orders of the Oourt—which allowance the Beferee had not made—and thereupon a final order or judgment conforming to the previous decision of the General Term and the judgment there rendered, was entered, by which the defendant was directed to pay, for the support of. the plaintiff, the annual sums so reported to be reasonable, and to secure such payment as recommended by the Beferee.
From this final order or judgment the defendant has appealed, and his appeal is now before us.
*652 It is therefore obvious that the only matter we have to consider is, whether that final order or judgment entered • at Special Term, on the twenty-second day of May, 1860, is erroneous.
The grounds upon which a reversal is sought, may be summed up in three points: First. That the proceedings on the reference were irregular and void, because the General Term of this Court had no power to order a reference, but should have directed a new trial or have remitted the proceedings to the Special Term to be there proceeded with as might be proper, and therefore that the proceedings on the reference, and the report of the Beferee formed no proper basis for the order or judgment now appealed from.
If it had been conceded that the General Term had no power to order the reference, it is not clear that such concession would entitle the defendant to a reversal of the order or judgment appealed from.
Under the statute the Court are directed (if a decree dissolving the marriage be pronounced,) to make a further decree compelling the defendant to provide such suitable allowance for the support of the complainant as the Court shall deem just.
The cause was brought to a hearing at Special Term, in order to obtain such further decree, on which hearing all the prior proceedings and proofs in the cause were produced. A report was also produced, accompanied with all the evidence bearing on that subject which either party desired to produce, which the Court deemed admissible, taken in due form in the presence of both parties, and taken not merely in accordance with such order of the General Term, but in pursuance of an order of the Special Term itself, made July 22d, 1859, by which the Beferee was directed to proceed in the Said reference (which latter order may, if necessary to meet an objection purely technical in its nature, be regarded as an adoption of the order of reference made by the General Term.) Besides, tfie evidence taken before the Beferee, and upon which the action of the Special Term in the further judgment *653 now appealed from was based, appears to have been taken by him without any objection from the defendant, or any suggestion that the Beferee had not jurisdiction to take the testimony. Such testimony was taken at great length on both sides, as well on behalf of the defendant as the plaintiff, and the defendant (independently of the confirmatory order of the Special Term already alluded to,) may well be held to have acquiesced in the reference and waived any objection thereto. If any suggestion had been made by the defendant, that the direction of the General Term was not in all respects regular, the plaintiff could readily have obtained at Special Term a distinct order for such reference, and, before proceeding in so protracted and expensive a reference, have obviated this technical objection.
The statute does not prescribe the formal manner in which the Court shall, on the application for the further decree, possess itself of the facts necessary to guide its judgment; and mere irregularities in the proceedings if no injustice has been done, and technical objections going to the manner in which a reference has been initiated, should not be permitted to influence the Court on such further hearing, or prevent the use, on such further hearing, of testimony fairly taken and reduced to writing, or the opinion of a Beferee honestly based thereon. There would seem, in strictness, no objection to the use even of affidavits on such further hearing, although the usage of the Court to resort to proofs formally taken by examination and cross-examination, may be the safer and better practice.
But we think the objection itself has no foundation; that there is not even a technical defect or irregularity in the mode of proceeding.
On the appeal to the General Term from the original judgment, the order to be made would depend upon the extent to which, in the opinion of the Court, errors had affected that judgment. If errors had been committed on the trial of the issues ordered to be tried by a Jury, *654 which so affected the result that the Court were not willing to proceed to judgment thereon, a new trial would be necessary. But we apprehend that the Court were not required to grant a new trial, merely because it found on the record some exceptions which were well taken, if satisfied upon the whole case that justice had been done. This case, on the part of the defendant, upon the former appeal to the General Term, and on the present appeal, has been treated and considered as though exceptions, if well taken, were to have the effect of reversing the judgment, however technical or unimportant to the general result they may be. Such effect was not given to mere errors on the trial of a feigned issue out of Chancery, and it is not apparent that the Code has introduced a new rule on this subject. (Forrest v. Forrest, 6 Duer, 138, 139 ; Barker v. Ray, 2 Russ., 63 ; Lyles v. Lyles, 1 Hill Ch., R., 82 ; Mulock v. Mulock, 1 Edw., 14, and cases cited; Apthorp v. Comstock, 2 Paige, 482, and cases cited.) And the observation, gathered from these cases, that the trial of issues, and much more the proceedings on the reference, being to inform the conscience of the Court, even the rejection of competent testimony or the admission of incompetent evidence does not necessarily require the Court to set aside the proceedings or grant a new trial, may properly be borne in mind in considering the objections heretofore to be noticed.
To recur to the specific point under discussion. The General Term were of opinion that no such errors had been committed as should affect the verdict of the Jury upon the questions properly submitted to them, or the judgment of divorce pronounced thereon, and that judgment was therefore affirmed. But in one particular com-. plained of by the defendant, the judgment was not deemed proper, and this gave the opportunity, and required the Court, in General Term, to exercise the power, clearly given by section 330 of the Code, to reverse, affirm or modify the judgment appealed from, and, if necessary, to order a new trial. The order of reference made by the *655 General Term was not therefore.an assumption of original jurisdiction to entertain motions in the first instance. A judgment directing the payment of permanent alimony, as provided in the statute, consequential upon the granting of the divorce, was before them on appeal, and on reversing that judgment, (or as it is called in the statute that further judgment or decree,) it was entirely competent to modify the whole judgment in the action by reversing this further judgment and directing a reference to ascertain the facts, i. <?., to do what it was considered the Court at Special Term (instead of making the further judgment or decree,) should have done.
The order in this respect is analogous to the granting of a new trial on the main issues, if that had been necessary—to the power almost daily exercised, (on appeal from judgments on the reports of Referees appointed to hear and determine all the issues, if the judgment be reversed,) of discharging the order of reference and ordering a new trial before a Jury—to the power to require a respondent to abate erroneous allowances included in his recovery, and, on his consenting to do so, affirming the judgment as to the residue. The Court of Appeals, in a recent case from this Court, have, we think, gone much further than was done in the present case by the General Term. They affirmed the judgment in part, and without reversing any part of the actual determination made, directed this Court to proceed, by reference or otherwise, to ascertain further facts, and to give judgment according to the result of such further inquiry. This will, at least, serve to show the power of the Court, on appeal, to make such direction or order as should have been made by the Special Term.
We have no doubt of the power of the General Term to make the order, and that the reference was therefore regular, and the proceedings before the Referee were properly before the Special Term on the hearing. The idea suggested that the General Term should remit proceedings on reversal, even in part, to the Special Term, to be pro *656 ceeded in, has no just application to proceedings at all times before the same Oourt; and independent of the section of the Code to which reference has been made, (§ 330,) it is most in accordance with our view of the powers of the Oourt and with sound reason to say, that on reversal of a' judgment in a matter which belongs to the equity jurisdiction of the Court, if a reference be proper, the General Term may direct it. A case would illustrate this, which we think is clear, and which goes much further than the one under consideration. For example, on a bill for an accounting, brought by an alleged partner, suppose the Judge at Special Term should decide that the defendant was not liable to account, and order judgment in his favor; but on appeal from the judgment, the General Term are of opinion that upon the facts found, (there being in the case no exceptions except to the conclusions of law from those facts,) the plaintiff was entitled to an account. We think it clear that the General Term not only might, but must, award judgment in favor of the plaintiff, and that the defendant account; and in such case, under subdivision 2 of § 271, might, of its own motion, direct a reference for the taking of such account.
In deference to the suggestions made on the argument of this appeal, we have presented these views. Others might be suggested; but in leaving this point it is proper that we should say, that if we deemed it doubtful we should question the propriety of sustaining the objection that the General Term had no power to make the order. It was made. Ho doubt it was made upon full consideration, and if, in any case, it be proper that one General Term should disregard a decision of a prior General Term, when relied upon as an authority or precedent in support of a rule of law or practice, we are not aware of any "instance in which one General Term has assumed to reverse an order of a previous General Term, and that is practically what we are called upon to do in this case. For suppose we were now to sustain this objection, what would be the effect of our decision reversing the judgment appealed from? The *657 order of the former General Term would stand, it is true, on the record. But if the plaintiff proceeded again to execute it, our decision would be invoked to.show it was made without power.
While, on the other hand, if the. plaintiff attempted to proceed with the cause in any other manner, the unrevoked order of the General Term would forbid. Such conflict between two General Terms, or their orders, touching the same matter in the same cause should not be permitted.
Second. The grounds of reversal relating to the rejection of evidence on the hearing before the Referee, and for which, under several points or heads, the defendant urges his appeal, have, we think, all been disposed of by the previous decision of this Court in July, 1859, on the defendant’s motion for a commission to examine witnesses in California, and on the appeal from the order denying that motion. (Forrest v. Forrest, 3 Bosw., 670 ; 687 et seq.)
It is true that the Court, both at Special and General Terms, were of opinion that there were other sufficient reasons for refusing a commission, than the inadmissibility of the evidence sought to be obtained, but that question was discussed at great length; it was deemed of great importance to the then pending reference, and it was deliberately considered and decided.
The Counsel for the defendant does not, we think, expect us to disregard that decision, although he very properly takes the position that it was erroneous, in order that he may have an opportunity to insist upon it as error, if it should be desired to review this judgment in another tribunal.
Upon an examination of all the exceptions mentioned in the points of Counsel to rulings of the Referee rejecting evidence, they seem to us to be covered by the decision referred to.
The evidence proposed, had reference to the conduct, reputation, associations or habits of the plaintiff since the decree for a divorce was pronounced, and although it is suggested, that the answer to some of the questions bore upon the inquiry, what is her station or position in society, *658 they have regard not to the station or position in which she had been accustomed to move, prior to the judgment, and in which it was the duty of the defendant to sustain her.
Third. The remaining point embraces the amount allowed for alimony, and the time from which it should be computed and allowed.
It is here also proper to suggest, that the report of the Referee, and the proceedings had before him, were rather advisory than conclusive. The Court could and did look over the whole subject, with all the light thrown upon it by any or all the proceedings laid before them. These included as well the testimony taken before the Referee, and his opinion, as also all the proceedings on the trial, and the other proceedings recited in the order now appealed from, these latter appearing to have been produced and submitted by the defendant himself.
If, therefore, the opinion of the Referee were liable to the criticisms suggested on the arguments, or even if there were errors committed before him, a reversal does not necessarily follow.
This is said, not as the expression of a dissent from the Referee, but for the purpose of stating the broader question which is in truth before us. Upon the whole case, as disclosed by the papers before us, is the allowancefor alimony too great, or is it computed from too early a day, so that we ought to reverse the judgment appealed from?
We think not. If this case furnished any occasion for •the suggestion, we might with propriety say, that the deliberate judgment of the Court at April Term, on the question above stated, ought not to be reversed, unless very clearly wrong, but here we fully concur in the views by which the Court was there governed, and think that the discretion of the Court was properly exercised.
It is said that undue importance has been given to the defendant’s ability to pay, ánd that the judgment is rather a partition of his income, than an allowance reasonably required by the plaintiff.
*659 We do not deem it necessary or profitable to review all the evidence on this subject, or discuss in detail all the reasons which might be assigned for the allowance—still less to analyze or review all the cases in which the ininciples governing the subject are stated.
It is clear that whatever sum is proposed as an allowance must be within the ability of the husband to supply. The ability of the defendant is a primary inquiry, and its importance cannot be exaggerated.
It must also be so clearly within his ability, that his own means of living shall not, by the allowance, be unreasonably reduced. His ability in this aspect is of first importance.
His ability being found or conceded, then the inquiry, what is suitable for the plaintiff, may be considered without any restriction arising from fear of injustice to the defendant.
It may, for the purposes of this case, be conceded that this provision for the wife ought never to exceed one-half of the income of the husband, and yet, if it be necessary, in considering the husband’s ability to provide suitably for the wife, his profession or occupation, and his annual income derivable therefrom, may properly be taken into the account.
So it must be conceded that one-third of the husband’s income may, without hesitation, be taken, if that be reasonably required, to make suitable provision for the plaintiff, and the husband cannot, with propriety, insist that the allowance of such one-third is extravagant.
Again, voluntary dispositions made by the defendant of his property, or any part of it pending the litigation, ought not in any degree to prejudice the plaintiff or reduce the amount of her allowance, especially if notwithstanding such dispositions he is still able to pay it; and even though his giving away his property makes the proportion of present income allowed to her greater than might otherwise be proper. To suffer her to be so prejudiced, would furnish to a husband, embittered by the proceeding against him, *660 a temptation voluntarily to impair his own ability to support the plaintiff.
And when it appeared, as it did by the proofs in this case, that although the defendant has parted with the apparent title to a very large amount of property, he still has the practical management and control of it according to his pleasure, such disposition of his estate is entitled to little, if any, weight in the consideration of the question.
We áre quite satisfied with the view taken by the Referee, that, considering the situation of the plaintiff before the misconduct of the defendant, the manner of life to which she was accustomed, the just expectations entertained by her, the prosperity which she was entitled to share with the .defendant, and her claims upon him for the comforts and indulgencies to which she was entitled as his wife, and which, as a kind and faithful husband, he must have yielded, and considering, further, the necessary expenses of living in a style in some degree corresponding with that which she was entitled to share with him, the sum of four thousand. dollars per annum is not unreasonable.
And the amount of defendant’s estate justified the allowance of that sum. If the voluntary dispositions made by the defendant pending the suit be taken into view, that estate considerably exceeds two hundred thousand dollars, and it was shown that his income, from his profession, for several years past, has exceeded twelve thousand dollars per annum.
Ho hardship is imposed upon him by the allowance in question. The discussion of this subject in Bishop on Marriage and Divorce, (chap. 27, §§ 604-621, 3d ed., vol. 2,) fully sustains the provision here made, and the authorities cited in its support seem to us quite conclusive.
In respect to the time from which the allowance is computed, it is to be observed that whatever the defendant has paid, under the order of the Court, for alimony pendente lite, was allowed to him by the Court at Special Term.
It is settled in this. State by the Court of last resort that *661 the allowance of permanent alimony may, in the discretion of the Court, depending upon the special circumstances of the case, be made to commence from the filing of the bill of complaint, (Burr v. Burr, 7 Hill, 208,) and Chief Justice Kelson says, in reviewing that branch of the decision of the Chancellor, (10 Paige, 37, 38,) “it was hardly insisted upon as involving any question of law,” and Senator Strong, (at page 222,) says, unless the allowance from the filing of the bill clearly indicates an abuse of judicial discretion, it does not appear a sufficient ground for a modification óf the decree, and, further, that it tends to the ends of justice.
It is not necessary, if indeed it be proper, for us to enter upon a discussion to show the propriety of our following the decision of the Court of last resort in our own State.
. It is proper to say, however, that there seems to us evident propriety in taking the date of the commencement of the suit as the period of the allowance, where, as in this case, the litigation, without fault on the part of the plaintiff, has been protracted through so many years, during a great portion of which the plaintiff was left by the defendant wholly without assistance from him, either for the expenses of the litigation or support for herself.
. To the suggestion that the accumulated amount is large, the answer is obvious; if the facts now ascertained and fixed by judgment, could have been certainly known, and the'course of judicial proceeding had been such that it was possible so to adjudge, the plaintiff, on the very day she filed her bill, was entitled to the annual sum now allowed to her. The defendant suffers no wrong by having been permitted to retain the money through the years of litigation during which the plaintiff has struggled, and presumptively he has made’the possession of those moneys largely useful. He is not charged with interest, and so, by that interest, he has been still enabled t© make very considerable profits out of those moneys.
It can be no sound discretion which will enable a defendant to protract such a litigation, or offer him a pre *662 miuin to induce hint to protract a litigation, by postponing the date of the allowance of alimony, and save to him the amount which should accrue to the plaintiff in the mean time, and yet, by not charging interest, that result follows in some degree in the case before us.
We feel no disposition to enhance the defendant’s profits still further, by giving, to him all the principal of such allowance, which, upon the rule for which he contends, (if the allowance were only to begin at the date of the decree fixing the rate of such permanent alimony,) would be saved to him by the delay.
The Beferee, in his opinion accompanying his report, has discussed the question submitted to him with eminent ability, and with great fairness, and, subject to the slight modification made on the hearing at Special Term, we see no just ground for withholding our concurrence in the result to which he arrived. The Court, at Special Term, upon consideration of the whole case, and in the exercise of the discretion by which the subject was necessarily to be governed, deemed the modification (which was favorable to the defendant) proper, and otherwise concurred in the conclusion of the Beferee.
We think the judgment appealed from should be affirmed.
Judgment affirmed.
Robertson, J.
All the questions raised on the present appeal were disposed of by this Couf t at General Term on a former appeal, except those which relate to the duty of this Court at a General Term to award a new trial for the improper admission of testimony, its power to order a reference, and the amount of alimony allowed, including the period for which it was allowed.
It is claimed in this case that evidence having been admitted, upon the trial of the issues therein, which was irrelevant to such issues, and only material to the question of alimony; and exceptions having been taken to the admission of such testimony, the Court, at Special or General Term, should have awarded a new trial. I am satisfied *663 with the reasoning in the opinion of the Court upon the present appeal, which distinguishes between the trial of issues in an action generally, and the trial of special issues in an action for a divorce, and am convinced that the Court has a discretion in the latter case not to order a new trial, for the admission of irrelevant evidence, where it can be seen that no prejudice can ensue to the party objecting. I feel, also, equally satisfied with the .reasoning of the Court in such opinion as to the power and jurisdiction of this Court at General Term, on an appeal for a judgment for alimony, to substitute therefor an order of reference to a Referee to ascertain and report it, being the order that ought to have been made at Special Term.
Upon the question of alimony, 'minute details of the style of living and means of the parties seem to have been entered into before the Referee, and he appears to have been guided by fixed rules in determining the amount. By the report and the testimony in the case, the value of all the defendant’s estate, both real and personal, at the time of the report, was nearly $270,000. This included unproductive real estate valued at $56,000, and other real estate, whose income was not proved, valued at about $45,000, which included his residence, and an adjoining lot valued at $38,000; and of which but one piece, worth $8,500, was proved to be productive, and no testimony was given as to the productiveness of the rest. That valuation of his estate also included personal property not proved to have been productive, valued at $32,000, consisting of a library, presented to Ms sisters since the judgment in this cause, books, pictures, bank stock, interests in a hotel, theatre and ship, bond of a debtor amounting to $15,000, and $2,500 in cash. The only amount of income proved was about $8,200. The payment of the principal of about $37,000 of the defendant’s personal estate, consisting of bonds and mortgages taken on the sale of real estate, is postponed until the plaintiff’s right of dower is extinguished. The defendant, by Ms profession, earned, at one *664 theatre, $14,000 a year for the five years succeeding the judgment in this action, having also performed at others.
The principles which keep the amount of alimony within certain bounds still leave a large latitude for discretion. (Bishop on Mar. & Div., §§ 617-630, 3d ed., vol. 2.) The learned and able Beferee, in the well considered and eloquent exposition accompanying his report, discloses the rules by which he was guided, and his reasons therefor. He assumed as a basis that the support to which a wife was entitled upon a divorce was her common law maintenance retained as an obligation on the husband’s part, notwithstanding the dissolution of the marriage tie; he also assumed that the “circumstances” of the parties which are to regulate the amount of such support, varied with the persons, their stages of life, character, conditions and places of abode; he also held that the standard for such support of the wife was governed by the style of living established by the husband previously, that on the one hand it does not necessarily consist of mere food, clothing and shelter, but that other matters which determine the position of a family enter into its composition; and on the other it does not include indemnity for the loss of the husband’s society, endearments and affection, although she had a right to expect them; that it may fluctuate with the increase or diminution of the husband’s fortune, even after the judgment in the action, and, therefore, the increase in this case may be taken into consideration in determining it; that the value of all property owned, although unproductive, may be taken into consideration also, if not unsaleable, and that, in estimating such value, any incumbrances, such as the wife’s right of dower, may be taken into view; and that the extreme limit of the share of the husband’s income to which the wife is entitled, in case of gross misconduct, is one-half.
The Beferee, in estimating the arrears of allowance since the beginning of this action, took the sum of $4,000 as an average annual sum, awarding in all the sum of about $36,000, and specified the same yearly allowance for the *665 future. In doing so he had regard primarily to the previously intended style of living of the parties, as indicated by the expenditure of upwards of $90,000, on a mansion for a residence, and next to the expenditure by the defendant of an income of over $20,000 annually since the divorce, making due allowance for the dependence upon him of his sisters for support. In calculating the amount, he considered himself entitled to go back to the commencement of the suit, both because sustained by authority, and because that was the beginning of the jurisdiction of the Court to determine what it should be. He also took into consideration that the plaintiff’s expenses in the litigation would absorb not only the sum awarded but other sums heretofore paid to her by the defendant. This allowance, the Beferee holds, should not be accompanied by any condition of remaining single.
The Counsel for the defendant contends that the support to be allowed the plaintiff is to be simply a reasonable amount, necessary to pay for the clothing, washing, food, dwelling place, medical advice, pew rent and the like, and the ordinary interchange of visits with her friends, suitable to her age and station in life, and that she is not to be furnished with even money for charity; that the husband’s estate is to be considered only so far as to ascertain if his means will enable him to pay it, having reference to other claims. Various cases were cited upon this last point, to wit : Purcell v. Purcell, (4 Hen. & Munf., 507,) where one-third of the husband’s estate was refused, and a suitable maintenance only was awarded; Logan v. Logan, ( 2 B. Monr., 142,) where so much only was allowed as should maintain the wife in decency and comfort; Lynde v. Lynde, (4 Sandf. Ch. R., 373,) in which the words were, to support her reasonably, having regard to her necessities; Pose v. Pose, (11 Paige, 166,) where alimony was refused altogether, unless the wife would abandon a previous settlement made by her husband of half of Ms property upon herself and two children; Sanford V. Sanford, (5 Day, 353,) which allowed one-tMrd of the husband’s estate, and Thornberry *666 v. Thornberry, (4 Litt., 251,) where the share given, by the statute of distributions, of the husband’s estate, is taken as a standard. I apprehend the indefinite terms used in such decisions, do not throw much light upon the subject, and need as much interpretation as “ support having regard to the circumstances of the parties,” in our statute, and that the sum allowed in this case would not amount to the portion of the defendant’s estate or income mentioned in some other of the cases cited. The income of the defendant for five years after the judgment in this case, including his professional earnings, exceeded, annually, $20,000, and no one can doubt that taking the valuation given as the real value, and after deducting one-third of that, as the value of the plaintiff’s dower, the remainder would yield exceeding $12,000 per annum; even if the defendant neglected to avail himself of that source of wealth, his professional abilities. I do not think that we are to be bound by the rigid rules claimed by the defendant’s Counsel, but that something of the latitude adopted by the Beferee is justifiable, upon the grounds expressed by him, which are in consonance with the views expressed by this Court at General Term, when the appeal from an order refusing a commission was before it.
The defendant’s Counsel, however, also contends that even if the rule as to the amount of support is to be relaxed, and it is to be governed by the style of living adopted by the parties, it is to be regulated by that which was adopted before the building and fitting of the costly, mansion before mentioned, the benefits of which she abandoned by an agreement for a voluntary separation, and the* acceptance of the sum of $1,500 as a support. I am unable to perceive why the Beferee was bound to go back to the early and more frugal mode of life of the parties as a standard, if, from a well-founded and afterwards realized expectation of an enlarged income, the parties made preparations for a mode of life adapted to its expenditure; nor why a compromise of domestic quarrels should be made to affect the standard of indemnity for a wrong, *667 when the rights which were assailed thereby were not relinquished by such compromise; besides this, the standard must have been their joint mode of life, not their separate modes of living.
It is also urged, on the part of the defendant, that the Referee has not taken into consideration the plaintiff’s ability to earn a maintenance. I do not understand that it is apparent that he has rejected this consideration; it is true, for the purpose of showing that such capacity is no defense to an allowance for alimony, he states that the defendant has no interest “in her acquisitions after the divorce,” and is “a debtor for the allowance;” but if he had, it would not have been erroneous. If the mode by which she earned her livelihood was unsuited to the standard of social position created by the defendant, she would not be bound to practice it. As his wife, he had a right to the legitimate exercise of her talents to increase their common stock, but never having chosen to exact it, and keeping her aloof from it, he has no right to insist upon her employing her. abilities in a way she never did while his wife, merely for the purpose of diminishing the amount which she is to receive from him. Such a consideration is entirely distinguishable from that arising from the possession of means by her. Besides this, the defendant’s ability to increase his income for the future, from his professional exertions, does not seem to have been considered, otherwise the amount to which she would have been entitled would be greatly increased; if that be so, there is still less reason for deducting her possible earnings.
The case of Burr v. Burr, (10 Paige, 38 ; 7 Hill, 208,) settles fully the power of the Court in all cases, to award, and the right of the plaintiff, in most cases, to receive permanent alimony from the commencement of the action. The reasons assigned in that case, as well as those given by the Referee in this case, seem eminently proper; until the guilt of the defendant is established, all the plaintiff has a right to require is temporary alimony, and provision for her expenses; when, however, it is established, it relates *668 back and determines rights which became vested the moment the divorce was sought, after the act which violated the marriage vow complained of was committed; but for the necessary delay of judicial inquiry, the plaintiff became entitled to the divorce at the beginning of the action; that, at least, was a demand of all the rights to which the plaintiff was entitled, and, even at common law, gave interest on the main claim in the suit, as an accessory.
I do not see that the objection of the plaintiff’s delay in prosecuting her claim amounts to a great deal in favor of the defendant; he has not been charged with any interest on the yearly sums fixed as the standard of allowance for the past; and although, in fixing on an average sum, the Beferee may have been influenced by an increase of the defendant’s estate, even that was not unreasonable. If it could have been clearly proved, at the moment of making the decree, that defendant would in a few years add $100,000 to his productive estate, and receive, at least, $14,000 per annum for five years, from the exercise of his professional abilities, is there any doubt that, if the other views of the Beferee are correct, the Court would have taken those circumstances into consideration ? The fact that we are looking back “upon certainty, instead of forward upon conjecture, does not diminish the duty of the Court to consider such increment. For any' excess of the sum allowed beyond one-third of the defendant’s income for the two years prior to the decree, if the allowance is not to be considered as an average, the interest on the residue, or even such payments, may be considered as fully making it up, such rebate of interest being over one-third of the amount. But, in fact, the arrears are made a gross sum, and if the whole amount does not exceed what ought to have been allowed, the report should not be interfered with. It is very clear that the sum does not amount to one-third of the plaintiff’s income for the whole time, and within that limit, the discretion exercised by the Beferee and the Court at Special Term ought not to be interfered with. The Beferee, in *669 deed, increased the allowance by the sums paid already by the defendant to the plaintiff, which were deducted by the Court. The defendant’s earnings, of course, are only to be considered as income during a certain period, to part of which, as an enlargement of her allowance, the plaintiff was entitled. Their disposition is unaccounted for, and of course they are not to be considered as an increase of the capital of the defendant’s estate. They may have been absorbed in the. costly residence already alluded to, or in the purchase of real estate.
Even if the value of the inchoate right of dower of the plaintiff in the real estate of the defendant be deducted, as the Beferee states he took it in consideration, it would not alter materially the state of things so far as the plaintiff’s amount of support is concerned; it detracts nothing from the income of productive property, does not touch the personal estate, and leaves property capable of producing more than three times the income allowed the plaintiff. When the income may be diminished by it, the parties interested can apply to diminish the alimony. After deducting from the value of the defendant’s property- $56,000 for that proved to be difficult of sale by reason of the plaintiff’s dower right, and $10,000 for library and pictures, and $38,000 for the defendant’s residence, there remains property worth $164,000 not proved to be unsaleable or unproductive. The withdrawal of $58,000 from his capital for a residence and its adornments does not remove it from consideration as part of the defendant’s fortune in considering the question of the plaintiff’s support; when brought back it swells the amount to $212,000, the interest of which is $14,000, without reference to the value of the real estate whose sale the dower right obstructs.
The present payment, however, of a gross sum of $36,000 as a debt, presents some embarrassment, as it goes to diminish the present fortune, which has apparently had some influence in determining the amount to be allowed the plaintiff; but this is more than made up by the amount of the allowance being the same when the defendant’s *670 income was $20,000, and the exclusion of the interest. It will be found by calculation that by an account current crediting the plaintiff each year with only one-third of the defendant’s income during that year and interest, omitting any income from unsaleable property, and charging her with the present allowance and interest, the balance would' be. largely in her favor. There does not appear, therefore, to be on this ground such gross error in the amount allowed as to warrant the inference of mistake in law in fixing it.
The conclusions of the Referee, sanctioned by the judgment at Special Term, that, as regarded the plaintiff, the gifts by the defendant to his family were void, whatever were the moral or social claims of that family upon him for support, and that the property whose title was taken by him in another person’s name was to be regarded as his, ought not to be disturbed as erroneous in fact or law.
I fully coincide with my brethren in the views taken by them as to the impropriety of undertaking to review a discretion once exercised in a case like this. This Court is not now called upon to originate a decision as to amount; that task is always a delicate and difficult one; but having been once discharged, there ought to be the strongest evidence of some gross mistake in law or fact, to warrant an appellate Court in overturning such a decision. Like cases of salvage, or unliquidated damages for a tort, when once fixed, nothing but such evidence ought to be allowed to disturb the first judgment.
Upon the whole, I feel satisfied that nothing presents itself to us to warrant a reversal of the judgment at Special Term, and it should therefore be affirmed with ' costs.[1]

 Forrest v. Forrest, 6 Duer, 102.

 On appeal to the Court of Appeals this judgment was affirmed. (25 N. Y. R., 501.)