## SARAH F. GALUSHA, RESPONDENT, *v.* NORMAN II. GALUSHA, APPELLANT.

43  181
f44ap536
43h   181
40 Mis⁷ 94

*Right to have an action for divorce tried by a jury — power of the court to determine the amount of alimony — determination of the income to be probably received on invested capital — articles of separation considered in fixing the alimony allowed by a judgment of divorce — effect of the judgment upon the articles of separation — the court may direct alimony to be paid after the death of the husband.*

In this action, brought by the plaintiff to procure an absolute divorce from her husband, the complaint alleged several specific acts of adultery by the defendant, but two of which were denied in the answer. When the trial of the action was moved at Special Term the defendant's counsel demanded a trial by a jury, and objected to a trial by the court.

*Held,* that as the evidence given upon the trial and the findings of the court related to the acts of adultery which were not denied in the answer, the court did not err in overruling the objection and permitting the trial to proceed for the purpose of taking the evidence and making a determination in relation only to the charges not denied by the answer.

The court found that the defendant was worth in " personal and real estate, over and above his debts, at least $150,000, from which he received an annual income of at least $7,500," and determined that there be paid to the plaintiff " as permanent alimony *during the term of her life,* the sum of $3,750 yearly, in quarterly payments," to be secured by mortgage on the real estate of the defendant, and that either party might apply to the court to change the award of alimony in case of change of circumstances, or for other good reason.

*Held,* that it appeared that the purpose of the court was to give to the plaintiff an amount equal to one-half of the defendant's income.

That while it may be assumed, when nothing appears to the contrary, that the productive character of property of a person is reasonable, and the results derived from it usual, there is a common knowledge, of which judicial notice may be taken, of current rates of income of capital not invested in speculative enterprises.

That, as without the aid of well guided business ability, available capital cannot be said to demand a net income of five per cent, and as the court was not assured by any evidence in this case, or by that observation which is common to all, that four per cent, and even less, was not a fair clear income of an estate equal in amount to that of the defendant, the amount to be paid should be reduced to $3,000.

The defendant alleged and proved articles of separation made between him and his wife, through a trustee, by which he agreed to give $5,000 to purchase for her a house and lot, $1,000 to pay for household furniture and other articles, and to pay her $1,200 annually, in monthly payments, the trustee agreeing to receive them in full payment and satisfaction for her maintenance and support during her life.

*Held,* that although the articles of separation constituted no bar to the action, they might properly be considered in determining the amount of alimony.

That while a judgment for divorce, simply, would not annul the articles, the allowance of alimony given by the judgment had the effect to defeat the operation of the agreement and put an end to it.

That while it was not usual for the court to direct, by judgment, the payment of alimony beyond the period of the joint lives of the parties, it had power to direct, as it had in this case, that to be done in the lifetime of the defendant which would result in making an effectual provision for such payments.

APPEAL by the defendant from a judgment, entered on a decision rendered at the Monroe Special Term, granting to the plaintiff an absolute divorce, and awarding to her permanent alimony in the sum of $3,750 payable annually, in quarterly payments during her life.

*Wm. H. Bowman,* for the appellant.

*J. A. Stull,* for the respondent.

BRADLEY, J.:

When the trial of the action was moved at Special Term, the defendant's counsel claimed for his client the right of trial by jury, and objected to its proceeding before the court without a jury. The objection was overruled and exception taken.

The statutory rule in divorce cases is, that if the answer puts in issue the allegation of adultery, the court must upon application of either party, or it may on its own motion, direct the trial of that issue by jury, and thereupon the questions to be tried must be prepared and settled. (Code Civil Pro., § 1757.) No such application was made and no issues had been settled for trial by jury. And although an action for divorce is in equity, the right to trial by jury of issues upon the allegations of adultery exists in such cases, and cannot be defeated without waiver of such trial as provided by statute (Id., § 1009) or otherwise tried by consent. This was a right existing at the time of the adoption of the Constitution of 1846 (2 R. S., 145, § 40; 2 Edm. Stat, 150, § 40), and, therefore, comes within the provision. (Const., art. 1, § 2; *Batzel v. Batzel,* 10 J. & S., 561; S. C., 54 How., 139.) Here was no waiver. This right of trial by jury had relation only to the issues taken by the answer upon allegations of adultery. The complaint alleges several specific acts of adultery by the defendant. The

defendant, by his answer, denies only two of them. The trial proceeded, and the evidence given related to the charges in that respect not put in issue by the answer. And the findings ·by the court of the acts of adultery committed by the defendant were those alleged and not denied in the pleadings. It may be· assumed that the court overruled the defendant's objection and permitted the trial to proceed in view of the undenied· allegations of the complaint, and for the 'purpose of taking the evidence and making determination in relation only to the charges in that respect not denied by the answer. That situation relieves the case from the charge of mistrial. The evidence is abundantly sufficient to support the conclusions of the court upon the main question, and the direction of judgment for the divorce.

The further inquiry has relation to the allowance of alimony awarded by the judgment. The court found that the defendant was worth in "personal and real estate, over and above his debts, at least one hundred and fifty thousand dollars, from which he receives an annual income of at least seven thousand and five hundred dollars," and determined that there be paid to the plaintiff, "as permament alimony during the term of her life, the sum of three thousand seven hundred and fifty dollars yearly, in quarterly payments," to be secured by mortgage on the real estate of the defendant, and that either party may' apply to the court to change the award of alimony in case of change of circumstances or for other good reason. Judgment was entered accordingly. It is contended, first, that this allowance of alimony is excessive, and, second, that the direction of its payment during the life of ·the plaintiff is error. The determination of the amount of alimony to be allowed in such cases is largely within the discretion of the court. Yet it must be a judicial discretion within the meaning of the statute which provides that the court may, in the final judgment, require the defendant to provide suitably "for the support of the plaintiff as justice requires, having regard to the circumstancs of the respective parties." (Code Civil Pro., § 1759.) This does not differ from 2 R. S., 145, § 45. While this is not a matter of division or apportionment of the property of the defendant, or of its income, but is a question of suitable support of the plaintiff, the extent of the means of the husband in such cases is treated as an important element in the measurement of the amount

ot the means that should be awarded as permanent alimony, which is not confined to what may be established or seen to be actually necessary for the support and comfortable maintenance of the plaintiff. (*Forrest* v. *Forrest*, 8 Bosw., 640; affirmed, 25 N. Y., 501; *Burr* v. *Burr*, 10 Paige, 20; affirmed, 7 Hill, 207.)

The conclusion that the defendant was worth the sum of $150,000 was justified by the evidence. The situation and productive character of his property does not very clearly appear, and the question of income from it is one largely of inference. The purpose of the court appears to have been to give to the plaintiff an amount equal to one-half of such income. And while it may be assumed, when nothing appears to the contrary, that the productive character of property of a person is reasonable, and the results derived from it usual, there is a common knowledge of which judicial notice may be taken, of current rates of income of capital not invested in speculative enterprises. Without the aid of well guided business ability, available capital cannot be said to demand a net income of five per cent. And we are not assured by any evidence in this case, or by that observation which is common to all, that four per cent, and even less, is not a fair clear income of an estate equal in amount to that of the defendant. The contingencies attending investments, and the taxes and insurance are essential items in the account with invested capital. We think the estimated income, as found by the court, of the amount upon which it was based, was higher than the evidence fairly justified, and that it should not be estimated to exceed four per cent.

The defendant alleged and proved an agreement known as articles of separation made between him and his wife, through the intervention of a trustee for the latter, April 30, 1883, by which he agreed to give absolutely $5,000, with which to purchase for her a house and lot; $1,000 to pay for medical attendance which she might require; also, a horse, phaeton, harness, sleigh and robes, and some household furniture, and to pay her $1,200 annually, in monthly payments, which she agreed to accept, and her trustee agreed that she would receive in full payment and satisfaction for her maintenance and support during her natural life. This instrument contained the provisions usual in articles of separation, amongst which was the agreement that they should permit each other to live separate

and apart from each other, and that neither should in any way molest or interfere with the other.

The defendant paid the $5,000, delivered the property, and paid $100 each month up to nearly the time of the commencement of this action, which was in April, 1885. Those articles of separation constituted no bar to the action (*Anderson* v. *Anderson*, 1 Edw. Ch., 380), but they properly may have been considered upon the question of alimony. Assuming that this agreement was voluntarily and deliberately made by the wife, with full understanding of her wants and reasonable requirements for her support and comfort, in view of her social relations and situation in life, this agreement, so far as related to its provision for her support and maintenance, was pertinently before the court on the question of permanent alimony. It sufficiently appears that it was made for reasons and under circumstances which would render performance by the defendant enforceable, and a judgment for divorce, simply, would not have the effect to annul it. (*Carpenter* v. *Osborn*, 102 N. Y., 552.) But the view of the court, evidently, and we think correctly, was that the allowance of the alimony given by the judgment had the effect to defeat the operation of the agreement and put an end to it. The holding in the case last cited, that the separation agreement remained effectual after the judgment in divorce, rested on the fact that no payment of alimony was directed by the judgment, yet it is not deemed improper to have the judgment in this action declare the effect intended upon the agreement in question.

The equivalent of a certain ratio of income has been sometimes adopted by the courts as a measure of alimony, which is not properly done merely because it is such, but for the reason that it represents fairly the suitable means for support in view of the situation of the parties. In this instance the court has deemed one-half the income upon the estimated value of the defendant's property the proper sum. We think that ratio is represented more accurately by the sum of $3,000, and that such is a reasonable and adequate amount annually for permanent alimony. The defendant had already provided the means for her to purchase a house as a place of residence, and provided her with some furniture. This amount is two and a half times that provided by the agreement expressing the terms, which she was apparently willing to accept as

a complete provision for her support while living separate from him. The circumstances which may have governed her action in making the agreement should not necessarily govern that of the court in awarding the allowance. The amount necessary for her support may be much less than that suitable as a provision for her proper maintenance. And when the means of the husband fairly permit, it should be liberal, and such as not to subject the wife to the hazard of future want, or make support dependent to any extent upon the uncertainty of her ability to perform service, and thus to supply in some degree her wants.

It may not be usual for the court to direct by judgment the payment of alimony beyond the period of the joint lives of the parties. Our attention has been called to only one reported case where it was done. This was held in *Burr* v. *Burr* (10 Paige, 20; affirmed, 7 Hill, 207), and that was a case for a limited divorce, where a decree of separation only, was granted. In such case the reason for limiting the allowance to the period of the husband's life is greater than when a divorce *a vinculo* is adjudged, because in the former she continues his wife, and on surviving him has the proprietary rights of widow, while in the latter she has only the right of dower in the real estate of which he was seized during the coverture, and in which she has an inchoate right of dower at the time of the rendition of the judgment dissolving the marriage. (*In re Ensign*, 37 Hun, 152; affirmed, 7 Eastern Rep., 405.)

This question arose in *Field* v. *Field* (66 How., 346), and the decision was affirmed by the General Term in the First Department (15 Abb. N. C., 434), where it was held that the obligation to pay alimony is a personal one, dependent upon the husband's means during his life, and that it is not in the power of the court to thus encumber his estate after his death; and that the direction of a judgment to pay during the life of the wife was, after the husband's death, ineffectual for any purpose. The court there says of *Burr* v. *Burr* that this question "was not presented upon a contest to the court." The question seems to have been distinctly raised and passed upon in the Burr case, as appears by the remark of the chancellor, that "the objection that the vice-chancellor was not authorized to decree a provision for the alimony of the

wife which should continue beyond the life of the husband is clearly untenable." And he then proceeds to give his reasons for the position. (10 Paige, 37.) It may be observed that at common law there is no power in the courts over the subject of divorce and alimony as such. In most of the States judicial power has been by their Constitutions denied to the legislature, and power to grant divorces and alimony has been vested in the courts. The jurisdiction and power of the courts in such cases are wholly statutory. (*Burtis* v. *Burtis*, Hopk., 557; *Peugnet* v. *Phelps*, 48 Barb, 566.) And it is upon the statute that the question must be determined. This permits the court, in the final judgment dissolving the marriage, to "*require the defendant* to provide \* \* \* for the support of the plaintiff." (Code of Civil Pro., § 1759.) The language is broad enough to embrace a provision for her during her life, and to require him to make such provision, although she may survive him; but the requirement can operate on him during his life only. The authorized judgment in that respect is, by the terms of the statute, to operate on the defendant, rather than on his property, and the provision to be made by him by force of the judgment and through the power of the court to compel its execution.

It is, therefore, not entirely apparent how a judgment alone and as such may be effectual in respect to installments of alimony which may accrue after the death of a defendant. The direction furnished by the judgment that he give security, may, by its execution, become effectual as a provision made by him to continue during her life. The statute under which the provision was made by the decree in *Burr* v. *Burr* was somewhat different in phraseology from that under consideration. It provided that the court might make decree for the suitable support and maintenance of the wife by the husband, "*or out of his property*, as may appear just and proper." (2 R. S., 147, § 54.) Whether this difference in the statutes is substantial is not important here. Nor is it necessary to consider the legal effect the judgment may have after the death of the defendant as to payments, which it directs to be made to the plaintiff during the time that she may survive him, inasmuch as it is deemed within the power of the court to direct that to be done in the lifetime of the defendant, which may result in effectual provision for such payments.

The right reserved by the judgment to the parties, of application to the court for modification of the provisions in question, furnishes ample opportunity for the protection of the rights of the respective parties during life, and to relieve the estate of the defendant after his death from any undue increase of amount arising from her right of dower. No other question seems to require consideration.

The judgment should be so modified as to reduce the annual amount of alimony to $3,000, and the quarterly payments proportionately, and by the insertion of a provision declaring the termination of the force and legal effect of the separation agreement of date April 30, 1883, and as so modified affirmed.

HAIGHT, J., concurred; LEWIS, J., not sitting.

Judgment modified so as to reduce the annual amount of alimony to $3,000 and quarterly payments proportionately, and by the insertion of a provision terminating the force and legal effect of the separation agreement of date April 30, 1883, and as so modified affirmed, without costs of this appeal to either party.